[Cite as *Poston v. Shelby-Love*, 2017-Ohio-6980.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 104969

---

## GREGORY S. POSTON
## ON BEHALF OF CRAIG S. POSTON

PLAINTIFF-APPELLANT

vs.

## LORI A. SHELBY-LOVE

DEFENDANT-APPELLEE

---

### JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Court Division
Case No. 2015 ADV 207589

**BEFORE:** Keough, A.J., McCormack, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** July 27, 2017

**ATTORNEY FOR APPELLANT**

L. Bryan Carr
1392 SOM Center Road
Mayfield Hts., Ohio 44124


**ATTORNEY FOR APPELLEE**

Bradley Hull
30195 Chagrin Blvd., Suite 110 North
Cleveland, Ohio 44124

KATHLEEN ANN KEOUGH, A.J.:

**{¶1}** Plaintiff-appellant Gregory S. Poston ("Gregory"), on behalf of Craig S. Poston ("Craig"), appeals from the trial court's judgment granting the motion for summary judgment of defendant-appellee, Lori A. Shelby-Love ("Love"). Finding no merit to the appeal, we affirm.

## I. Background

**{¶2}** This case arises from claims by Craig, by and through his guardian Gregory, related to an inheritance from the late Elise Poston. Love is Elise's sister. Gregory is the ex-husband of Elise; they divorced in 1994. Gregory and Elise had two children, both of whom are now adults: Craig, who is severely disabled, and Erin. Craig and Elise lived together in Elise's apartment prior to Elise's death.

**{¶3}** On March 30, 2009, Elise established a deferred fixed annuity IRA with Ameriprise Financial. She initially named Erin as sole beneficiary of the account. On February 23, 2012, after she was diagnosed with breast cancer, Elise changed the beneficiary designation, making Erin and Love coequal beneficiaries. Elise died on July 11, 2012, and the funds were disbursed to Erin and Love, each receiving approximately $200,000.

**{¶4}** Elise also had a life insurance policy with AT&T, her previous employer. The death benefit under the policy was $50,000, of which Erin received $25,000 and Craig received $25,000.

**{¶5}** After Elise's death, Gregory — who had little contact with Craig during the 17 years after he and Elise divorced — became Craig's legally-appointed guardian. In 2015, Gregory, on behalf of Craig, filed an amended complaint against Love, asserting claims for unjust enrichment and constructive trust, undue influence, conversion, breach of contract, and declaratory judgment. The gist of Craig's claims was that Elise named Love as a beneficiary of her IRA with the intention that Love use those funds to support Craig.

**{¶6}** Love moved for summary judgment, which the trial court granted. The trial court found that Elise was aware of the options available for providing for her son after her death, and that there was "simply no evidence" to support Craig's claims. This appeal followed.

## II. Law and Analysis

### A. Standard of Review

**{¶7}** An appellate court reviews the trial court's judgment regarding a summary judgment motion de novo, using the same standard that the trial court applies under Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Civ.R. 56(C) provides that summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696

N.E.2d 201 (1998); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

## B.    Genuine Issues of Material Fact

{¶8} In his single assignment of error, Craig contends that the trial court erred in granting Love's motion for summary judgment because there were genuine issues of material fact regarding his claims for declaratory judgment, undue influence, conversion, and unjust enrichment.   He makes no argument regarding his claim for breach of an oral contract and thus has waived any issue regarding the trial court's grant of summary judgment on that claim.

## C.    Undue Influence

{¶9} In order to show undue influence, the plaintiff must demonstrate (1) a susceptible testator, (2) another's opportunity to exert influence, (3) the fact of improper influence exerted or attempted, and (4) the result showing the effect of such influence. *Ryerson v. White*, 8th Dist. Cuyahoga No. 100547, 2014-Ohio-3233, ¶ 24, citing *West v. Henry*, 173 Ohio St. 498, 510-511, 184 N.E.2d 200 (1962).   Undue influence must be proven by clear and convincing evidence.   *Schwartz v. Tedrick*, 8th Dist. Cuyahoga No. 102082, 2016-Ohio-1218, ¶ 15, citing *Kasick v. Kobela*, 184 Ohio App.3d 433, 2009-Ohio-5239, 921 N.E.2d 297, ¶ 26 (8th Dist.).

{¶10} In his deposition, Gregory testified that Love "manipulated" Elise into changing the beneficiary designation by "not advising her to do the appropriate thing, to make a will, put the money in a trust with a will structuring how it was to be used" for

Craig's care. Gregory testified that Love "was advising" Elise before she died about her health and "other issues," but Gregory admitted that "what they discussed, I'm not even familiar with. I was not with them there." Nevertheless, Gregory testified that Love "agreed to do that, to be the beneficiary on the grounds that those funds would be used for my son."

{¶11} When he was asked whether Elise had a diminished mental capacity toward the end of her life, Gregory said that she was becoming "hyper" and seemed to be worried about something, but he could not make a "medical evaluation" and could not determine whether she was "processing things more slowly or not."

{¶12} Cheryl Roberts, Elise's sister, testified that in the six months before she died, Elise did not seem any different mentally, and that "she just seemed like Lisa [Cheryl's name for Elise]." Cheryl testified further that she does not know why Elise left the money to Love. Cheryl testified that Love told her she was made a beneficiary because Elise did not want Gregory to get her money, and that Elise wanted Love to give some of the money to the family. Cheryl said that after Elise's death, Love gave her $5,000, and gave money to other family members as well.

{¶13} In light of this testimony, we find no evidence to support the undue influence claim. There is no evidence whatsoever that Elise was susceptible to any undue influence. None of the 550 pages of medical records produced by the Cleveland Clinic regarding Elise's medical treatment in the months before she died demonstrate that she was susceptible and, in fact, indicate that she was "alert and oriented" at each

appointment. Furthermore, Cheryl testified that Elise did not seem any different mentally before her death, and Gregory said he could offer no evidence that Elise was "processing things more slowly" than before.

{¶14} Similarly, there is no evidence that Love attempted to influence Elise. Love testified that she had no knowledge of Elise's financial affairs. And even if Love did know about them, Gregory admitted he did not know what Love discussed with Elise when she allegedly "advised" her before her death, or what Elise "was thinking" when she changed the beneficiary designation.

{¶15} The evidence that Craig points to to support this claim is irrelevant. Whether he and Cheryl are disturbed that Love did not give "one cent" of the account proceeds to him is not relevant to whether Love unduly influenced Elise to make her a beneficiary of the account. Likewise, Erin's alleged failure to give Craig his share of Elise's personal assets has no bearing on Love's conduct in this matter. And whether Love tried to physically assault Cheryl after Cheryl accused her of taking money that did not belong to her is similarly irrelevant to whether Love unduly influenced Elise.

{¶16} Furthermore, despite Craig's argument otherwise, Elise's statement in the 2009 financial planning worksheet relating to the IRA that her financial goals included "make sure son is taken care of" does not indicate that Love unduly influenced Elise. Rather, it demonstrates, as the trial court concluded, that Elise worked with a financial planner prior to her designation of her beneficiaries, and that she was aware of the options

available for providing for her son after her death. In fact, Elise named Craig as a beneficiary of her life insurance policy.

{¶17} In short, even construing all the evidence and inferences therefrom in Craig's favor, as we are required to do on a motion for summary judgment, there is no evidence that Love unduly influenced Elise to change the beneficiary designation. Love's alleged failure to advise Elise to dispose of the account through a will or to set up a trust for Craig is not undue influence.

**D.    Conversion**

{¶18} Conversion is "the wrongful control or exercise of dominion over the property belonging to another inconsistent with or in denial of the rights of the owner." *Beavers v. PNC Bank, N.A.*, 8th Dist. Cuyahoga No. 99773, 2013-Ohio-5318, ¶ 29. The elements of conversion are "'(1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages.'" *Schiff v. Dickson*, 8th Dist Cuyahoga Nos. 96539 and 96541, 2011-Ohio-6079, ¶ 30, quoting *Dream Makers v. Marshek*, 8th Dist. Cuyahoga No. 81249, 2002-Ohio-7069 , ¶ 19.

{¶19} The conversion claim fails because Craig never had a possessory interest in the account or its proceeds — he was never named as a beneficiary of the account, and Elise did not give instructions that the account beneficiaries were to hold the proceeds for Craig's benefit. Furthermore, because an individual retirement account is a nonprobate asset that does not become part of the decedent's estate, *Ward v. Patrizi*, 11th Dist.

Geauga No. 2010-G-2994, 2011-Ohio-5100, ¶ 5, Craig never had any expectation of an inheritance from the account. Simply put, because the account proceeds never belonged to him, Craig's conversion claim necessarily fails.

**E.     Unjust Enrichment/Constructive Trust**

**{¶20}** The elements of an unjust enrichment claim are: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Just Like Us Family Enrichment Ctr. v. Easter*, 8th Dist. Cuyahoga No. 94180, 2010-Ohio-4893, ¶ 13.

**{¶21}**     There is no evidence that Craig ever conferred a benefit upon Love. Indeed, the amended complaint makes no reference to any benefit conferred by Craig upon Love, presumably because there is none. Likewise, Craig's brief in opposition to Love's motion for summary judgment did not point to any evidence in support of this claim. Because Craig never bestowed a benefit upon Love, the claim for unjust enrichment necessarily fails.

**{¶22}** Likewise, the constructive trust claim fails. "A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another to prevent fraud or unjust enrichment." *Hunting Valley Builders, Inc. v. Women's Fed. Sav. Bank*, 8th Dist. Cuyahoga No. 57439, 1990 Ohio App. LEXIS 3669, *14 (Aug. 23, 1990). Craig produced no evidence of fraud or unjust enrichment and, accordingly, his claim for imposition of a constructive trust fails.

**F.    Declaratory Judgment**

{¶23} Last, Craig contends that the court should issue a declaratory judgment that Elise's designation of Love as a beneficiary of the IRA proceeds "was not intended as a gift."   There is no evidence to support such a judgment, however. Craig produced no evidence from which an inference could be drawn that Love did anything other than receive an inheritance that Elise freely left her.

{¶24} Our review of the record is consistent with that of the trial court, which found that "the only 'facts' that support the plaintiff's case are the opinions and assumptions of Greg Poston and Cheryl Roberts.   There is simply no evidence to support their claims."   Accordingly, the trial court did not err in granting Love's motion for summary judgment.

{¶25} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

TIM McCORMACK, J., and
ANITA LASTER MAYS, J., CONCUR