[Cite as *Mathews v. Cooper*, 2021-Ohio-2768.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

LAKEESHA MATHEWS, ET AL.,  :

    Plaintiffs-Appellants/  :      No. 109974
    Cross-Appellees,

    :

    v.              :

JERRY JOSEPH COOPER, ET AL.,  :

    :

    Defendants-Appellees/
    Cross-Appellants.    :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 12, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-889030

---

### *Appearances:*

McGookey Law Offices, L.L.C., and Daniel L. McGookey,
*for appellants/cross-appellees*.

Weiszner Law L.L.C., and S. Zalman Weiszner, *for
appellees/cross-appellants*.

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Plaintiffs-appellants/cross-appellees LaKeesha Mathews and Carmen Houston (collectively, "appellants") appeal from a judgment of the Cuyahoga County Court of Common Pleas that (1) granted the motion for summary

judgment filed by defendants-appellees/cross-appellants Mendy Weiszner ("Mendy") and Nachman Weiszner ("Nachman") (collectively, the "Weiszners" or "appellees") on appellants' claims for damages to their personal belongings that allegedly occurred when appellees removed and transported appellants' belongings to a storage unit in connection with appellants' eviction and (2) awarded appellees $6,000 in unpaid rent on their counterclaim following a bench trial. Appellees cross-appeal and contend that the trial court erred in failing to award them additional sums on their counterclaim for moving and storage expenses and attorney fees incurred in connection with the eviction.

{¶ 2} For the reasons that follow, we affirm the trial court.

## Procedural and Factual Background

{¶ 3} In July 2013, Federal Home Loan Mortgage Corporation ("FHLMC") purchased a residential property located at 24885 Twickenham Drive, in Beachwood, Ohio (the "property" or the "premises") at a sheriff's sale. The sale was confirmed and the property was conveyed to FHLMC in 2015.

### The Eviction Action in Shaker Heights Municipal Court

{¶ 4} In May 2016, FHLMC filed a forcible entry and detainer action in the Shaker Heights Municipal Court (Case No. 16 CVG 00690) against Mathews and others who were allegedly living on the property without color of title. On June 22, 2016, a hearing was held before a magistrate. The magistrate issued a decision determining that the occupants of the property had no color of title and that FHLMC had the right of possession. The trial court adopted the magistrate's decision and

entered judgment in favor of FHLMC for restitution and costs. A writ of execution was issued; however, execution was not completed and some or all of the occupants, including Mathews, continued to reside on the premises.[1]

{¶ 5} On August 17, 2016, FHLMC filed another forcible entry and detainer action along with a claim for damages in the Shaker Heights Municipal Court (Case No. 16 CVG 1098) against Mathews and others who were allegedly living on the property without color of title (the "eviction action").[2] On September 8, 2016, a hearing was held on the forcible entry and detainer claim, and the trial court entered judgment for restitution and costs in favor of FHLMC. The filing of successive bankruptcy petitions by several alleged occupants of the property resulted in stays that delayed execution of the judgment for restitution.

{¶ 6} In June 2017, Nachman purchased the property at an online auction. Mendy, Nachman's brother, was to be the property manager. Nachman did not know the condition of the property at the time he purchased it. After he purchased

---

[1] It is not entirely clear from the limited record before us what happened in this case. The docket indicates that a writ of execution was issued and that a "lock change" was "completed" by the bailiff on July 22, 2016, but Mathews and others continued to reside on the premises after this occurred.

[2] The complaint from the eviction action is not part of the record in this appeal. Accordingly, we do not know what, specifically, was pled in the complaint. However, both parties acknowledged during the trial below, in their appellate briefs and at oral argument that the complaint in the eviction action included both a "first cause" for forcible entry and detainer and a "second cause" for damages. There is nothing in the record to indicate that appellees ever withdrew or dismissed their second cause for damages in the eviction action.

the property, Nachman learned that there were people living in the house. On July 20, 2017, Nachman was substituted as the plaintiff in the eviction action.

{¶ 7} On August 31, 2017, another eviction hearing was held before a magistrate. At that time, appellants were still living on the property. The magistrate issued a decision determining that Mathews and others were living on the property without color of title, that Nachman was the owner of the property and that Nachman had the right of possession. The trial court adopted the magistrate's decision and entered judgment in favor of Nachman for restitution and the costs of the proceeding. The judgment indicated that a writ was to issue on or after September 12, 2017 but no later than October 10, 2017.

{¶ 8} On August 31, 2017, appellants were served with an eviction notice (the "eviction notice"), advising them that they had until September 11, 2017 to "move out on your own" and that "[a]ny time after 9-12-17 and upon request by the landlord [sic], the bailiff has the authority to move you out with no further notice to you. You are encouraged to move out during the grace period prior to the above noted date."

{¶ 9} Later that day, Mathews filed a notice of appeal to this court (Appeal No. 106195). On September 5, 2017, Mathews filed an emergency motion to stay the judgment of eviction with this court pending appeal. This court denied the motion on the grounds that Mathews had failed to first file a motion for stay with the trial court as required by App.R. 7(A). On September 8, 2017, Mathews filed a mandamus action in the Ohio Supreme Court (Case No. 17-1255), along with a

motion for emergency stay.  On September 13, 2017, Mathews filed a motion for an emergency stay with this court, "pending the consideration of the matter before the Ohio Supreme Court."  This court denied the motion for stay, noting that Mathews had filed an "identical" motion for stay in the Ohio Supreme Court and indicating that it would "defer to the Ohio Supreme Court regarding whether the matter should be stayed."  Both the appeal and the mandamus action were later dismissed.[3]

{¶ 10}  Appellants did not vacate the property and did not remove their personal belongings from the property.  On September 12, 2017, a writ of execution was issued (the "writ of execution").

**The Move-Out Process**

{¶ 11}  On September 14, 2017, the bailiff for the Shaker Heights Municipal Court (the "bailiff") and an officer from the Beachwood Police Department came to the property to oversee the changing of the locks, to transfer possession of the property to Nachman and to remove appellants and all other occupants from the property.  At that time, the house was filled with appellants' furniture, appliances and other personal belongings.  Mendy hired movers to remove appellants' personal property from the premises and to transport the property to two storage units Mendy had rented at a CubeSmart storage facility in Warrensville Heights, Ohio. The move began on or about September 17, 2017 and was completed on or about

---

[3] On December 11, 2017, this court granted appellee's unopposed motion to dismiss the appeal, concluding that because appellant had been evicted from the premises, the appeal was moot.  On March 14, 2018, the Ohio Supreme Court granted respondents' motion to dismiss the mandamus action.  *State ex rel. Mathews v. Montgomery*, 2018-Ohio-923.

September 21, 2017. Appellants were notified of the location of their personal belongings on or about September 20, 2017. Appellants claimed that numerous items among the personal belongings they had left inside the residence were lost or damaged during the move-out process.

**The Cuyahoga County Common Pleas Court Action**

{¶ 12} On November 17, 2017, Mathews filed a complaint in the Cuyahoga County Common Pleas Court against the Weiszners and Jerry Cooper and Shirley Alexander, the alleged movers of appellants' personal property. In April 2018, Houston joined the suit as a new party plaintiff in an amended complaint. On July 30, 2018, appellants filed a notice of voluntary dismissal, dismissing their claims against Cooper and Alexander only without prejudice.

{¶ 13} On August 2, 2018, with leave of court, appellants filed a second amended complaint. Appellants asserted claims against appellees related to the removal of plaintiffs' personal belongings from the property, including claims for trespass to chattels, bailment and conversion. Appellants alleged that appellees had "used no care in selecting and hiring" movers to move their belongings or to "supervise them during the process." Appellants further alleged that during the five-day "move out process," they had repeatedly requested that they be allowed to retrieve their belongings but their requests were refused and that numerous items were missing and/or damaged when appellants went to retrieve their belongings from the storage facility. Appellants sought to recover an unspecified amount in

excess of $25,000 in compensatory damages, an unspecified amount in excess of $25,000 in punitive damages, plus attorney fees and costs.

{¶ 14} Appellees filed an answer, denying the material allegations of the second amended complaint and asserting various affirmative defenses. They also filed a counterclaim against appellants, seeking to recover unpaid rent, the costs of removing and storing appellants' personal property and the attorney fees and court costs they incurred in prosecuting the eviction action.[4] Appellants filed a reply to the counterclaim, denying the material allegations of the counterclaim and asserting various affirmative defenses.

{¶ 15} On December 20, 2018, appellants filed a motion for partial summary judgment on the issue of liability on their claims for trespass to chattels, bailment and conversion. In support of their motion, appellants attached affidavits from Mathews and Houston, setting forth their version of the events and detailing the substantial personal property that was allegedly lost or damaged during the move-out process. Appellees opposed the motion. The trial court denied the motion.

**Appellees' Motion for Summary Judgment on Appellants' Claims**

{¶ 16} On February 4, 2019, appellees filed a motion for summary judgment on appellants' claims. They argued that there were no genuine issues of material

---

[4] In their counterclaim, appellees also initially sought to recover costs allegedly expended for electrical, plumbing, structural and cosmetic repairs to the property and payments they had allegedly made for work on the property by laborers appellants had hired. However, at the trial on their counterclaim, appellees indicated that they were no longer seeking to recover those costs.

fact and that they were entitled to judgment as a matter of law on appellants' claims because (1) appellants, knowing that they were to be evicted from the property, had not removed their personal belongings from the property, (2) appellees had acted pursuant to a court order for restitution of the property and the instructions of the bailiff in removing appellants' personal property from the residence and transporting their personal property to the storage units, (3) appellees owed no duty to appellants with respect to personal property appellants had abandoned on the property other than "to transfer the belongings to a storage unit and give them timely notice and access thereto" and (4) appellants had no right to enter the property to retrieve their belongings or to otherwise access their abandoned belongings until appellees transferred the belongings to a storage unit.

{¶ 17} In support of their motion, appellees attached copies of (1) the magistrate's decision and judgment in Shaker Hts. M.C. No. 16 CVG 00690, (2) the quitclaim deed from FHLMC to Nachman recorded on June 30, 2017, (3) the online docket from the eviction action, (4) the magistrate's decision, judgment entry and writ of execution in the eviction action, (5) the notice of eviction, (6) a Shaker Heights Municipal Court Eviction Service document dated September 14, 2017, signed by the bailiff, detailing what had occurred during the move-out process (the "move-out summary"), (7) notices of the disposition of appellants' personal property and (8) the rental agreements for two self-storage units at CubeSmart (the "storage unit rental agreements").

{¶ 18} Appellants opposed the motion, reiterating many of the arguments they had made in support of their motion for partial summary judgment. Specifically, appellants asserted that they had "proven" a trespass to chattels claim based on evidence that appellees had "intentionally dispossessed" appellants of their property when appellees "refused them access to their things after removing them from the home." Appellants further argued that appellees "assumed the role of bailees" of appellants' property when appellees denied appellants access to their personal belongings after the belongings were removed from the home and that appellees "breached their duties as bailees" as a result of their negligence in the care and handling of appellants' personal property, i.e., by failing to take measures to ensure that the movers they hired were insured and qualified and by failing to safeguard appellants' property. Appellants also argued that appellees were liable for conversion of their personal property because appellees "only had the right to remove [appellants'] property from the home" and "refused [appellants'] demand for the return of their property" once the property had been removed from the home. Finally, appellants argued that a genuine issue of material fact existed as to whether they were entitled to recover punitive damages.

{¶ 19} On March 19, 2019, the trial court granted appellees' motion for summary judgment on appellants' claims. The trial court found that there were no genuine issues of material fact and that the defendants were entitled to judgment as a matter of law on appellants' claims, reasoning as follows:

As part of an eviction proceeding, the defendants obtained an order from the Shaker Heights Municipal Court for the removal of the plaintiff's personal property. The defendants hired a third-party moving company, then gave timely notice and access to plaintiffs so that they may retrieve their belongings at CubeSmart storage. As such, the motion is granted.

{¶ 20} On March 26, 2019, appellants filed a motion for reconsideration of the trial court's order granting appellees' motion for summary judgment. Appellants argued that their claims for trespass to chattels and breach of bailment duties were supported by the facts and the law and that appellees had "failed to offer a shred of evidence" to rebut those claims. Specifically, appellants argued that the trial court had failed to consider (1) as to their trespass of chattels claim, whether appellees allowed appellants' personal property to be impaired as to its condition, quality or value while in appellees' possession and (2) as to their claim for breach of bailment duties, whether appellees were negligent in the selection and supervision of the movers. Appellants also claimed that they had presented sufficient evidence to support their claim for punitive damages. On April 10, 2019, the trial court denied appellants' motion for reconsideration.

{¶ 21} Appellants appealed the trial court's March 19, 2019 and April 10, 2019 rulings to this court. This court, sua sponte, dismissed the appeal for lack of a final, appealable order.

### Appellees' Motion for Summary Judgment on Their Counterclaim

{¶ 22} On June 10, 2019, appellees filed, with leave of court, a motion for summary judgment on their counterclaim. Appellees asserted that there were no

genuine issues of material fact and that appellees were entitled to judgment as a matter of law based on evidence of the following: (1) appellants had been occupying the premises when Nachman purchased the property and had not paid any rent, (2) appellants had been unjustly enriched, to the detriment of Nachman, as a result of their occupancy of the premises without paying rent and (3) appellants had been evicted and had abandoned their personal belongings on the premises. Appellees argued that they were entitled to recover $6,000 as compensation for appellants' use and occupation of the property, the $700 in moving expenses and $270.84 in storage fees appellees had spent to move and store appellants' belongings and the $1,548.94 in attorney fees appellees had paid to litigate the eviction action. In support of their motion, appellees submitted: an affidavit from Mendy, setting forth the facts and the expenses incurred in connection with the eviction and move-out; an affidavit from Eytan Rosenblum, a real estate agent with Keller Williams, setting forth his estimate of $2,000 as a "fair monthly rental value" for the property; the writ of execution; the August 31, 2017 judgment entry in the eviction action; the notice of eviction; the bailiff's move-out summary; a receipt dated September 18, 2017 from "Jays Handyman" for $700 for "moveout/cleanout"; the rental agreements for the two storage units (listing monthly rental rates of $208.32 and $62.52) and cancelled checks to appellees' counsel in the amount of $750 (dated August 31, 2017) and $798.94 (dated November 21, 2017).

{¶ 23} Appellants opposed the motion, arguing that (1) appellees were barred by the doctrines of waiver and/or estoppel from pursuing their claim for

damages because appellees had allegedly stated at the August 31, 2017 eviction hearing that they "would not be seeking damages for rent" and (2) at a minimum, a genuine issue of material fact existed as to whether appellees were entitled to recover on their counterclaim for damages. In support of their opposition, appellants attached an affidavit from Rick Jenkins. In his affidavit, Jenkins averred that he was present in court during the August 31, 2017 eviction hearing, assisting appellants' counsel as a paralegal. He averred that after the municipal court announced its decision to grant the eviction, "a discussion ensued [as to] whether Mr. Weisner [sic] intended to pursue a damages claim." He further averred that "[a]t that time, Mr. Weisner's [sic] Counsel represented to the Court that it [sic] would not be pursuing a claim for damages" and that "[s]ubsequently, an appeal was filed, and that case was dismissed."

{¶ 24} The trial court denied appellees' motion for summary judgment on their counterclaim.

### Bench Trial on Appellees' Counterclaim

{¶ 25} On January 23, 2020, the case proceeded to a bench trial on appellees' counterclaim. Nachman, Mendy, Mathews, Houston and Jenkins testified at the trial.

{¶ 26} Mendy testified that when he learned that appellants were occupying the property, he offered them $500 to vacate the property voluntarily but that they refused to leave. He testified that on September 14, 2017, the scheduled move-out date, the bailiff and a Beachwood police officer came to the property to assist in the

transfer of possession of the property, to secure the premises and to oversee the changing of the locks. Mendy indicated that appellants were still living in the home, but were not present at the home when he, the police and the bailiff arrived.

{¶ 27} Mendy stated that after the police and bailiff forced entry into the house through the garage door, they discovered that appellants had "left everything inside." Mendy testified that the bailiff informed him that it was "against the rules of this area" to leave items on the tree lawn. Mendy indicated that, due to the volume of personal belongings in the home, the bailiff instructed Mendy to hire a mover, place appellants' personal belongings in storage for 30 days and provide notice to the court of the location where appellants' personal belongings were being stored and could be collected once the move-out was completed.

{¶ 28} As the locks were being changed, Mathews and a friend arrived at the property. The police told Mathews that she needed to leave or she would be arrested for criminal trespass. Mathews and her friend left and Mathews returned with Houston. Once again, the police told appellants that they needed to leave or that they would be arrested for criminal trespass. With police supervision, Houston was permitted to enter the house to retrieve his medicine and he was permitted to remove his vehicle from the property but, despite their repeated requests, appellants were not permitted to collect any other personal belongings from the house.

{¶ 29} Mendy testified that he had difficulty finding movers who could promptly remove appellants' personal belongings from the premises. He stated that he called "multiple moving companies" who informed him it would be two or three

weeks before they could "move a house [with] that size of stuff out." He said that finally he "reached some people" who said they could do the job in two or three days. Mendy stated that he believed that was "a reasonable amount of time to get a moving company set up to move stuff" and that he retained those movers to remove and transport appellants' property to the storage facility.

{¶ 30} Mathews testified that she was aware that a restitution order had been issued ordering appellants to move out of the property but that she did not vacate the property before the move-out date because she was "still trying to litigate the case as far as the home ownership." Mathews and Houston testified that they made repeated requests of Mendy, the police, the bailiff and appellees' counsel to allow them retrieve their remaining personal belongings from the home but that they were refused and were told they would be advised of the location to which their personal belongings had been taken once the move-out was completed. Houston testified that, based on what the movers were wearing and because they were using an unmarked pickup truck with a handicapped tag hanging from the rearview mirror (rather than a moving truck) to transport appellants' belongings, he did not believe the movers Mendy had hired to move their property were professional movers.

{¶ 31} Mendy testified that appellees were seeking a total of $8,652.20 in damages on their counterclaim: $6,000 for unpaid rent, $700 paid to the movers for removing and transporting appellants' belongings, $270.84 for the rental of two storage units for 30 days, attorney fees of $750 for the eviction action, attorney fees of $798.94 for the appeal in the eviction action and $132.42 in court costs in the

eviction action.[5]   Appellees introduced receipts documenting their claimed damages.  Mendy stated that Nachman gave him money to pay all of these expenses and that he wrote the checks to pay the expenses.

{¶ 32} Mendy testified that he believed $2,000/month was a reasonable, market rental value for the property based on a multiple listing service assessment and rental assessment for the property that he had obtained from a local realtor, research he conducted on the websites Zillow and Airbnb and his own knowledge and familiarity with the area — having grown up in the area, having graduated from high school in the area and having recently lived in the area, i.e., "[a]bout three houses away, for two years."

{¶ 33} Mathews testified that she was a real estate agent and that she had lived in the home for ten years.  She stated that when she "owned the home," the mortgage was $1,559 a month and that she believed the reasonable monthly rental value for the property during the time she lived there was $1,049 "based on the $175,000 value that the county gave the property" for property tax purposes after she filed a complaint with the Cuyahoga County Board of Revision.  Mathews acknowledged that she had listed the property on Airbnb as a rental property in July 2017 at a rate of $141/night but stated that she had never, in fact, rented out the property.

---

[5] Although the total of the damages itemized above is $8,652.20, appellees stated at trial that they were seeking to recover a slightly lower sum, $8,647.18, in damages.  The basis for the discrepancy is unclear.

{¶ 34} Based on testimony by Jenkins, a self-described "[p]aralegal/expert witness" in the eviction action, appellants asserted that appellees had waived their claim for unpaid rent at the eviction hearing. Jenkins stated that he was present at the eviction hearing. He testified that after the eviction was ordered, the magistrate asked Mendy and appellees' counsel whether they "would seek a second cause of action." He indicated that Mendy and appellees' counsel responded that they would not. Jenkins acknowledged, however, that no court order had been issued dismissing the second cause in the eviction action.

{¶ 35} Appellees disputed that they had waived their claim for unpaid rent. Mendy testified that the hearing on the second cause "never happened" simply because appellants had appealed the municipal court's decision on the first cause "[a]nd then this case was filed."

{¶ 36} On September 25, 2020, the trial court issued its order and opinion. The trial court found that appellants had occupied the property for July, August and approximately half of September 2017 without paying rent. The trial court further found that there was "insufficient evidence" to establish that appellees had waived a claim for unpaid rent, that Mendy's testimony regarding the market rental rate of the property was credible, that the reasonable rental value of the property during the time period at issue was $2,000/month and that appellees were entitled to $6,000 for unpaid rent. The trial court also found that appellants' refusal to comply with the Shaker Heights Municipal Court's restitution order caused appellees to incur "moving/storage expenses, attorney fees, and court costs" but that those costs

and expenses were "not recoverable in the current action" and that "any costs arising directly from the eviction proceedings should have been asserted in that action." The trial court entered judgment in favor of appellees and against appellants in the amount of $6,000, plus post-judgment interest and costs.

{¶ 37} Appellants appealed, raising the following two assignments of error for review:

> Assignment of Error No. 1: The trial court erred in granting defendants' motion for summary judgment dismissing plaintiffs' complaint and in denying plaintiffs' motion for reconsideration.
>
> Assignment of Error No. 2: The trial court erred in entering findings of facts and conclusions of law and granting defendants judgment on their counterclaim.

{¶ 38} Appellees cross-appealed, raising the following five cross-assignments of error for review:

> Cross-Assignment of Error No. 1: Appellants' argument that the court incorrectly awarded damages to appellees for 3 months' rent is without merit.
>
> Cross-Assignment of Error No. 2: The trial court erred in holding that any costs arising directly from the eviction proceedings should have been asserted in that action.
>
> Cross-Assignment of Error No. 3: The trial court erred by failing to award appellees damages for retaining movers to move appellants' belongings out of the Twickenham property, to a storage facility.
>
> Cross-Assignment of Error No. 4: The trial court erred by failing to award appellees damages for costs of obtaining and paying the cost of the storage facility.
>
> Cross-Assignment of Error No. 5: The trial court erred by failing to award appellees damages for costs of attorneys fees in the pursuit of the eviction.

{¶ 39} Because the parties' assignments of error and/or cross-assignments of error are interrelated, they will be addressed together where appropriate.

**Law and Analysis**

### Summary Judgment on Appellants' Claims for Damage to Their Personal Property

{¶ 40} In their first assignment of error, appellants argue that the trial court erred in granting summary judgment in favor of appellees on their claims for trespass to chattels, breach of bailment duties and conversion.

{¶ 41} We review summary judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We accord no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.

{¶ 42} Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law.

{¶ 43} On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary

judgment is not appropriate; if the moving party meets this burden, the nonmoving party must then point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293. If the nonmoving party fails to meet this burden, summary judgment is appropriate. *Id.*

### Trespass to Chattels and Conversion

{¶ 44} Appellants argue that the trial court erred in granting appellees' motion for summary judgment on their claims of trespass to chattels and conversion because they presented evidence that appellees had "intentionally dispossessed" appellants of their property and had "wrongfully withheld" appellants' property by refusing to grant appellants immediate access to their personal belongings after removing the belongings from the home despite appellants' repeated requests for access to their belongings. We disagree.

{¶ 45} A trespass to chattels occurs when one intentionally dispossesses another of their personal property or intentionally uses or intermeddles with a chattel in the possession of another. *See, e.g., Crawford v. Tivener*, 5th Dist. Knox No. 15CA22, 2016-Ohio-6982, ¶ 25-26, citing 1 Restatement of the Law 2d, Torts, Section 217 (1979); *Pointe at Gateway Condo. Owner's Assn. v. Schmelzer*, 8th Dist. Cuyahoga Nos. 98761 and 99130, 2013-Ohio-3615, ¶ 69, citing *Conley v. Caudill*, 4th Dist. Pike No. 02CA69775, 2003-Ohio-2854, ¶ 7.

{¶ 46} Conversion is "'the wrongful control or exercise of dominion over the property belonging to another inconsistent with or in denial of the rights of the owner.'" *Poston ex rel. Poston v. Shelby-Love*, 2017-Ohio-6980, 95 N.E.3d 659, ¶ 18

(8th Dist.), quoting *Beavers v. PNC Bank, N.A.*, 8th Dist. Cuyahoga No. 99773, 2013-Ohio-5318, ¶ 29. To prevail on a claim for conversion, a plaintiff must prove: (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of the plaintiff's property rights and (3) damages. *See, e.g., Figgie v. Figgie*, 8th Dist. Cuyahoga No. 109834, 2021-Ohio-1812, ¶ 11; 6750 *BMS, L.L.C. v. Drentlau*, 2016-Ohio-1385, 62 N.E.3d 928, ¶ 28 (8th Dist.).

{¶ 47} In this case, there was no evidence that appellees "intentionally dispossessed" appellants of their personal belongings or "wrongfully" controlled, possessed or exercised dominion over appellants' personal property. Appellants dispossessed themselves of their own personal belongings when they failed to remove their personal belongings from the property within the grace period provided following the municipal court's August 31, 2017 judgment of restitution in favor of Nachman. There is no genuine issue of material fact that (1) appellants had no right to be on the property or to have their personal belongings on the property on or after September 14, 2017, (2) appellees were acting pursuant to a court order in taking possession of the premises on September 14, 2017 and (3) in hiring movers to remove appellants' personal belongings from the premises and transport them to a storage facility, appellees were acting in accordance with instructions Mendy had received from the bailiff pursuant to the writ of execution.

{¶ 48} Appellants assert that because they "wanted their property back as soon as possible," appellees "only had the right to remove [appellants'] property

from the [h]ome, and had a duty to allow [appellants] access to it at the doorstep's edge." Appellants cite no authority supporting this position. Based on the court's restitution order, Nachman not only had a legal right to possession of the home, he had the legal right to possession of the property in its entirety. His right to possession of the premises extended beyond "the doorstep's edge."

{¶ 49} Appellants also contend that because they made repeated demands for the return of their personal belongings while the movers were moving their personal property out of the premises, they should have been given the "opportunity to protect their interests" in their personal belongings. Once again, appellants cite no authority supporting this position. There is no dispute that appellants knew that a judgment for restitution had been entered in favor of Nachman and against appellants, that appellants knew that a prior judgment for restitution had been entered against appellants more than a year earlier, that appellants had received prior notice of the move-out date and that appellants knew and understood that they had been ordered to vacate the premises with their personal belongings prior to the move-out date. Appellants had every "opportunity to protect their interests" in their personal property by removing that property from the premises within the grace period prior to the move-out date. There is no dispute that appellants were provided prompt notice of the location of their personal belongings and granted immediate access to the storage units to which their belongings had been transported once the move-out process was completed.

{¶ 50} In support of their claims that appellees were liable for a trespass to chattels or conversion based on their refusal to permit appellants to immediately retrieve their personal belongings before they were transported to the storage facility, appellants cite *Crawford*, 2016-Ohio-6982, and *Conley*, 2003-Ohio-2854. However, neither of these cases supports appellants' position.

{¶ 51} In *Crawford*, the Fifth District held that the trial court had erred in granting judgment in favor of the tenants and against the landlord on the tenants' trespass to chattels claim where the tenants were allegedly denied access to their personal property for "at least seven days" after the landlord had changed the locks. *Crawford* at ¶ 8, 24, 29. The appellate court concluded that the landlord did not "bar" tenants from "access" to their personal property and that there was insufficient evidence to support a claim of trespass to chattels where the door to the premises had been left open, the locks had been removed or damaged and the tenants' "inability to access" the personal property they had "left behind" was "created by the need to secure the premises after having been vacated by [the tenants]." *Id.* at ¶ 29, 31-32.[6]

{¶ 52} In *Conley*, a mobile home owner sued a lot owner for removing and damaging his mobile home where the lot owner removed the mobile home from the lot leased by the mobile home owner and brought it to the lot owner's farm until the mobile home owner paid $600 in back rent. *Conley* at ¶ 2-3. When the mobile home

---

[6] Indeed, this case presents an even stronger case for rejecting a trespass to chattels claim than *Crawford* because in *Crawford*, unlike in this case, the landlord had not initiated eviction proceedings against the tenants. *Crawford* at ¶ 7.

owner retrieved the mobile home from the farm, it was allegedly damaged and missing items of personal property that had been stored inside the mobile home. *Id.* at ¶ 3, 8. The court held that because the lot owner did not have "any legal right" to take or possess the mobile home, the facts could support a finding of either trespass to chattels or conversion. *Id.* at ¶ 7-9.

{¶ 53} In *Conley*, however, the lot owner had not instituted eviction proceedings against the mobile home owner and was not acting pursuant to a court order entitling the lot owner to possession of the premises in removing the mobile home from the lot. As such, *Conley* is clearly distinguishable from the facts here.

{¶ 54} Accordingly, the trial court did not err in granting appellees' motion for summary judgment on appellees' claims for trespass to chattels and conversion.

### Breach of Bailment Duties

{¶ 55} Appellants also argue that they presented sufficient evidence to support a claim for breach of bailment duties and that the trial court, therefore, erred in granting appellees' motion for summary judgment on appellants' bailment claim.

{¶ 56} "'A bailment has been defined as the delivery of goods or personal property by one person to another in trust for a particular purpose, with a contract, express or implied, that the property shall be returned once the purpose has been faithfully executed.'" *Keybank Natl. Assn. v. Mazer Corp.*, 188 Ohio App.3d 278, 286, 2010-Ohio-1508, 935 N.E.2d 428, ¶ 31 (2d Dist.), quoting *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 830, 621 N.E.2d 1294 (2d Dist.). In a

bailment situation, only possession is transferred and ownership remains in the bailor. *See, e.g., Bobb Chevrolet, Inc. v. Dobbins,* 4th Dist. Ross No. 01CA2621, 2002-Ohio-4256, ¶ 13, citing *Tomas v. Nationwide Mut. Ins. Co.*, 79 Ohio App.3d 624, 629, 607 N.E.2d 944 (10th Dist.1992).

{¶ 57} To establish a cause of action under a bailment theory, the bailor must prove: (1) the existence of a bailment contract between the parties; (2) delivery of the bailed property to the bailee and (3) failure of the bailee to redeliver the bailed property undamaged at the termination of the bailment. *See, e.g., Garofoli v. Whiskey Island Partners Ltd.*, 2014-Ohio-5433, 25 N.E.3d 400, ¶ 24 (8th Dist.). If a plaintiff makes a prima facie case for breach of a bailment contract, the burden then shifts to the bailee to explain the failure to redeliver the bailed property. *Id.*

{¶ 58} A bailment contract may be formed without the assent of both parties when custody is taken of property which is left by the bailor. However, absent an express agreement between the parties, the alleged bailee must take some act that is consistent with an intent to possess custody of the property to create a bailment. *See, e.g., Bess v. Traders World, Inc.*, 12th Dist. Warren No. CA2001-06-063, 2001 Ohio App. LEXIS 5872, 9-10 (Dec. 24, 2001); *Ringler v. Sias*, 68 Ohio App.2d 230, 231-232, 428 N.E.2d 869 (10th Dist.1980).

{¶ 59} Appellants contend that appellees "took action consistent with an intent to possess" appellants' personal property and, thereby, "assumed the role" of gratuitous bailees of appellants' personal property based on their "repeated refusal" to allow appellants access to their property during the five-day period in which the

move-out process occurred. Appellants further contend that appellees breached their duties as bailees due to their "negligence in the care and handling" of their property, i.e., by failing to allow appellants to retrieve their personal belongings once it was "taken to the front doorstep," by failing to ensure that the movers they hired were insured and qualified and by failing to take measures to safeguard appellants' property once it was removed from the premises, resulting in "tremendous loss and damage" to appellants.[7]

{¶ 60} Here, there was no evidence that appellees took any action that was "consistent with an intent to possess custody of" appellants' property. On the date Nachman was entitled to possession of the premises, appellees found themselves in the untenable position of having to remove a household full of furniture, appliances and other personal belongings from the premises because appellants had failed to comply with the municipal court's order. Undisputed evidence shows that, consistent with the municipal court's order granting Nachman restitution of the property and the instructions of the bailiff, appellees: (1) rented storage units in which to place appellants' personal belongings; (2) hired movers to remove appellants' personal belongings from the property and to transport those belongings to the storage units and (3) provided prompt notice of the location where appellants could access their personal belongings once the move-out process was completed. There is no evidence appellees at any point intended to possess custody of any of

---

[7] Appellants do not claim that appellees directly or willfully destroyed or damaged any of appellants' personal property.

appellants' personal belongings; the evidence shows only that appellees wanted to get appellants' belongings off the property in a lawful and expeditious manner. *Cf. State ex rel. Marsol Apartment Co. v. Vannuci*, 68 Ohio App.2d 181, 183, 428 N.E.2d 468 (8th Dist.1980) ("[U]nder Ohio law, where a party prevails in an action for forcible entry and detainer, it is the clear legal duty of the bailiff to remove defendant's * * * *possessions* as well as his *person* from the premises after the writ of restitution has been issued by the court in order to effect the restitution of the premises to the lawful owner."); *Levin v. Dickerson*, 8th Dist. Cuyahoga No. 86248, 2006-Ohio-1337, ¶ 45 (rejecting tenant's argument that he had presented sufficient evidence to create a factual question as to whether landlord was negligent by hiring a moving company that allegedly damaged personal belongings tenant had left on the property following his eviction, concluding that "[s]ince the Cleveland Heights Municipal Court had relieved [landlord] of any duty by issuing the writ of restitution to its bailiff, [tenant's] argument fails"); *Ringler* at 231-232 (where sheriff was "legally obligated to restore the property to defendants" pursuant to a writ of execution, assistance supplied to the deputy sheriff by the two sons of an employee of defendants, in physically accomplishing the setout of plaintiff's property following the instructions of the deputy sheriff, did not create a duty on the part of defendants based upon the manner in which the setout of the property occurred).

{¶ 61} Further, appellants assert that appellees were "gratuitous" bailees. A gratuitous bailment is one in which the transfer of possession or use of the bailed property is without compensation. *See, e.g., Tarr v. Am. Flooring Transp., Inc.*, 5th

Dist. Stark No. 2014 CA 00216, 2015-Ohio-3313, ¶ 25; *Monea v. Lanci*, 5th Dist. Stark No. 2011CA00050, 2011-Ohio-6377, ¶ 79.[8] Although appellants argue that they are entitled to recover for appellees' "negligence in the care and handling" of appellants' personal property and failure "to use ordinary care in the handling of it," "[a] gratuitous bailee owes no duty of ordinary care to protect the bailed property." *Tarr* at ¶ 25. A gratuitous bailee is liable only for losses arising from gross negligence. *See, e.g., Csank v. Westlake Condominium Assn.*, 8th Dist. Cuyahoga No. 66774, 1995 Ohio App. LEXIS 10, 8-9 (Jan. 5, 1995), citing *United States Fire Ins. Co. v. Paramount Fur Servs., Inc.*, 168 Ohio St. 431, 436-437, 156 N.E.2d 121 (1959); *Tarr* at ¶ 25; *Monea* at ¶ 88. Even if appellees could be deemed to have been gratuitous bailees of appellants' personal belongings, appellants have not argued that appellees were grossly negligent in the handling of appellants' personal property.

---

[8] Appellants cite *Monea* for the proposition that appellees became gratuitous bailees of appellants' personal property when they evicted appellants and took possession of the house, which contained appellants' personal belongings. In *Monea*, the court found that there was sufficient evidence for a jury to find that a tenant did not abandon his personal property and that a gratuitous bailment was created when the property owner took possession of the house and the personal property then inside the house belonging to the tenant after the property owner evicted the tenant. 2011-Ohio-6377, at ¶ 79-83. In that case, however, the property owner who regained possession of the premises after prevailing on a forcible entry and detainer action did not pursue a writ of execution pursuant to R.C. 1923.14 to remove the evicted tenant's personal belongings from the property. *Id.* at ¶ 85. In this case, it is undisputed that appellees obtained a writ of execution and removed appellants' personal belongings from the property and transported their belongings to a storage facility in accordance with the instructions of the bailiff.

**{¶ 62}** Because there was no evidence of the existence of a bailment or the breach of any bailment duties, the trial court did not err in granting appellees' motion for summary judgment on appellants' bailment claim.

**{¶ 63}** Appellants' first assignment of error is overruled.

**Appellees' Claim for Unpaid Rent**

**{¶ 64}** Appellants' second assignment of error and appellees' first cross-assignment of error relate to the trial court's award of $6,000 for unpaid rent to appellees on their counterclaim. In their second assignment of error, appellants argue that the trial court's award for unpaid rent is against the manifest weight of the evidence. In their first cross-assignment of error, appellees assert that appellants' argument is meritless.

**{¶ 65}** As an initial matter, we note that appellees' first cross-assignment of error is not, in fact, an "assignment of error." No error is identified in appellees' first cross-assignment of error. To the contrary, in their first assignment of error, appellees simply assert that appellants' argument is meritless and that the trial court correctly awarded them $6,000 in unpaid rent. For that reason, we disregard appellees' first cross-assignment of error.

**{¶ 66}** Turning to appellants' second assignment of error, in reviewing a civil appeal from a bench trial, this court applies a manifest weight standard of review. *United States Bank Natl. Assn. v. Robinson*, 2020-Ohio-32, 150 N.E.3d 1262, ¶ 8 (8th Dist.), citing *Benton Village Condo Owners Assn. v. Bridge*, 8th Dist. Cuyahoga No. 106892, 2018-Ohio-4896, ¶ 13. Judgments supported by some competent,

credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Moore v. Chagrin Valley Paving*, 8th Dist. Cuyahoga No. 109900, 2021-Ohio-1302, ¶ 9.

{¶ 67} Appellants do not include any citations to the record in support of their argument that the trial court's award of $6,000 in unpaid rent is against the manifest weight of the evidence. For this reason alone, we could overrule this assignment of error. App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based[.]"); App.R. 16(A)(7) ("The appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.").

{¶ 68} Further, appellants do not explain how or why they believe the trial court's award of $6,000 in unpaid rent is against the manifest weight of the evidence other than to assert that because appellees sought the "exact same damages" and presented the "exact same documents" and the "exact same witness testimony" at trial as they did in support of their motion for summary judgment — which the trial court denied — the trial court's "conflicting decision" following trial should be reversed.

{¶ 69} Appellees dispute that they presented the "exact same" evidence at trial as they presented on summary judgment and argue that, based on the different

standards for granting summary judgment and granting judgment after trial, the trial court's award was supported by competent, credible evidence in the record and, therefore, was not against the manifest weight of the evidence.

{¶ 70} There is no dispute that (1) appellants lived in the property during the months of July, August and approximately one-half of September 2017 without paying any rent and (2) Nachman — not appellants — was the owner of record of the property at that time. Nachman testified that he purchased the property in June 2017 for approximately $200,000 and resold it approximately fourteen months later for $360,000 or $370,000. Mendy testified that he believed $2,000/month was a reasonable, market rental value for the property based on a multiple listing service assessment and rental assessment for the property that he had obtained from a local realtor, research he had conducted on the websites Zillow and Airbnb and his own knowledge and familiarity with the area, having grown up in the area, having graduated from high school in the area and having recently lived in the area, i.e., "[a]bout three houses away, for two years." Further, Mathews testified that she had listed the property on Airbnb as a rental property in July 2017 at a rate of $141/night. This was some competent, credible to support the trial court's award of $6,000 in unpaid rent to appellees.

{¶ 71} Because appellants have not shown that the trial court's award of $6,000 in unpaid rent was against the manifest weight of the evidence, we overrule appellants' second assignment of error.

**Appellees' Claim for Moving and Storage Expenses and Attorney Fees Related to the Eviction**

{¶ 72} In their second, third, fourth and fifth cross-assignments of error, appellees contend that the trial court erred in refusing to award them (1) the expenses they incurred in hiring movers to remove and transport appellants' personal belongings to the storage facility, (2) the costs of renting the storage units and (3) the attorney fees they incurred in connection with the eviction action.[9]

{¶ 73} The trial court held that appellees' claim for moving and storage expenses, attorney fees and court costs were "not recoverable in the current action" because "any costs arising directly from the eviction proceedings should have been asserted in that action." Appellees argue that because appellants filed this case, while appellants' appeal in the eviction action was pending, they had "no way of litigating" their damages claim in the eviction action and were, therefore, entitled to pursue their claim for damages related to the eviction action in this case. Appellees further argue that they were entitled to recover their moving expenses, storage expenses and attorney fees related to the eviction action in this case rather than the eviction action because (1) "2nd cause claims survive the 1st cause" in a forcible entry and detainer action "even if the 1st cause is moot" and (2) R.C. 1923.03 "protect[ed]" its counterclaim "from the doctrines of res judicata and collateral estoppel."

---

[9] As indicated above, at the trial on their counterclaim, appellees also argued that they were entitled to recover $132.42 in court costs in the eviction action as part of their damages on their counterclaim. They have abandoned that claim on appeal. It appears that appellees were already awarded those costs in the eviction action. In its August 31, 2017 judgment entry, the municipal court entered judgment in favor of Nachman for restitution and "the costs of this proceeding."

{¶ 74} A forcible entry and detainer action '"is a civil remedy provided by statute and intended to affect only the question of the present right to possess real property.'" *Di Fiore v. Booker*, 8th Dist. Cuyahoga No. 108946, 2020-Ohio-3188, ¶ 25, quoting *Cuyahoga Metro. Hous. Auth. v. Jackson*, 67 Ohio St.2d 129, 131, 423 N.E.2d 177 (1981). '"The purpose of the forcible entry and detainer statutes is to provide a summary, extraordinary, and speedy method for the recovery of possession of real estate in the cases especially enumerated by statute.'" *Jackson* at 131, quoting 24 Ohio Jurisprudence 2d 455, Forcible Entry and Detainer, Section 2.

{¶ 75} Forcible entry and detainer actions are governed by R.C. Chapter 1923. Pursuant to R.C. 1923.02(A)(5), forcible entry and detainer is appropriate when a defendant is an occupier of lands or tenements, without color of title, and the complainant has the right of possession to them. *Karras v. Karras*, 2d Dist. Montgomery No. 27094, 2016-Ohio-8511, ¶ 22.

{¶ 76} Because a forcible entry and detainer action is a summary proceeding, R.C. 1923.03 provides that "[j]udgments under this chapter are not a bar to a later action brought by either party." Although there is no requirement that related claims for damages be joined with a claim for forcible entry and detainer, the joinder of a claim for unpaid rent or other damages to a claim for forcible entry and detainer is "a common practice." *See, e.g., Skerl v. Sheet Metal Prods. Co.*, 8th Dist. Cuyahoga No. 43743, 1982 Ohio App. LEXIS 11386, 6-7 & fn. 5 (July 1, 1982) ('"Commonly, claims to recover possession of real property in forcible entry and detainer are joined with claims for damages for nonpayment of rent * * * Civ. R. 18

provides for joinder of claims and remedies generally.'"), quoting *Jackson* at 132 & fn. 6; *Di Fiore* at ¶ 24.

{¶ 77} Where an action for forcible entry and detainer is joined with an action for unpaid rent or other damages, the matter is typically divided into two separate hearings. In the first hearing on the claim for forcible entry and detainer (the "first cause"), the court determines whether the plaintiff, typically a landlord or property owner, is entitled to possession of the premises. If the plaintiff prevails on the first cause and the occupant is evicted, a second hearing will be held on the "second cause" for unpaid rent or damages. Often, until an occupant has been evicted and has vacated the premises, a plaintiff cannot know the full extent of his or her damages in the second cause.

{¶ 78} Although, pursuant to R.C. 1923.03, it was not required that an action for damages be joined with the forcible entry and detainer action in the municipal court, in the eviction action in this case, a "second cause" for damages was joined with the forcible entry and detainer action, and Nachman was substituted as the plaintiff in the eviction action. At the trial on their counterclaim, appellees denied that they ever told the municipal court magistrate that Nachman did not intend to pursue the second cause for damages in the eviction action. After appellants' appeal of the municipal court's August 31, 2017 judgment entry was dismissed, the case was remanded back to the municipal court. However, Nachman did not take steps to pursue his "second cause" for damages in the eviction action. There is nothing in the record that shows that Nachman voluntarily dismissed his second cause in the

eviction action.  There is likewise nothing in the record that shows that the municipal court dismissed Nachman's second cause for damages.  Indeed, the online docket for the Shaker Heights Municipal Court currently shows the "case status" of the eviction action as "[o]pen."

{¶ 79} As a general matter, a single cause of action cannot be split up into two or more causes of action, nor can more than one action be simultaneously maintained against a party on a single cause of action.  Claim-splitting is prohibited, and the jurisdictional priority rule prevents the prosecution of two actions involving the same claims against the same parties in two courts of concurrent jurisdiction at the same time.  *See, e.g.,* 1 Ohio Jurisprudence 3d, Actions, Section 65 ("Under Rule 18(A) of the Rules of Civil Procedure, the joinder of claims or causes of action is permissive, not mandatory, but a claim that constitutes a single cause of action may not properly be split into two claims for separate litigation or separate actions.  The owner of a cause of action or an indivisible demand will not be permitted to divide or split that cause of action or demand so as to make it the subject of several suits."); *State ex rel. Racing Guild of Ohio v. Morgan*, 17 Ohio St.3d 54, 56, 476 N.E.2d 1060 (1985) ("'As between courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties.'"), quoting *State ex rel. Phillips v. Polcar*, 50 Ohio St.2d 279, 364 N.E.2d 33 (1977), syllabus; *cf. Smith v. Simon*, 11th Dist. Ashtabula Nos. 2000-A-0084 and 2000-A-0090, 2001 Ohio App. LEXIS 5429, 5 (Dec. 7, 2001) (second

count for damages in forcible entry and detainer action was similar to contract claim pending in common pleas court and was, therefore, barred by the jurisdictional priority rule); *Soliel Tans, L.L.C. v. Timber Bentley Coe, L.L.C.*, 8th Dist. Cuyahoga No. 108125, 2019-Ohio-4889, ¶ 32 (observing that, pursuant to R.C. 1923.03, if a landlord files an action for forcible entry and detainer and does not join it with any other action, Civ.R. 13(A) does not apply and the tenant need not file any counterclaims, but if the forcible entry and detainer action is coupled with an action for back rent or damages, Civ.R. 13(A) applies and all compulsory counterclaims must be asserted). Appellees have not pointed to any authority entitling them to recover, in their subsequently filed counterclaim in the common pleas court, the damages related to the eviction that they could have recovered by pursuing their pending second cause for damages in the eviction action.

{¶ 80} *Reck v. Whalen*, 114 Ohio App.3d 16, 682 N.E.2d 721 (2d Dist.2014) — the only case appellees cite in support of their argument that the trial court erred in holding that appellees' claim for moving expenses, storage expenses and attorney fees related to the eviction action "should have been asserted in that action" — is inapposite. In that case, the trial court had retained jurisdiction of a forcible entry and detainer action filed by a landlord and transferred the tenant's counterclaim for retaliatory eviction to the Miami County Common Pleas Court. *Id.* at 17-18. The trial court found in favor of the landlord in the forcible entry and detainer action, granting the landlord a writ of restitution, and the tenant appealed. The Second District dismissed the tenant's appeal of the eviction order as moot after the tenant

admitted that the landlord had been "successful in a second eviction action" against her and that she had vacated the premises. *Id.* at 19.

{¶ 81} The tenant argued that the appeal should not be declared moot because the trial court's findings in the eviction order, rejecting her retaliatory eviction defense, would prejudice her retaliatory eviction counterclaim pending in the common pleas court. *Id.* The Second District disagreed, citing R.C. 1923.03 and explaining as follows:

> In our view, [R.C. 1923.03] fully protects [the tenant], in her counterclaim against [the landlord] pending in the Miami County Common Pleas Court, from the application of the doctrines of res judicata or collateral estoppel to bar or preclude her claims asserted in that action. * * * The trial court made no express finding as to whether there was a retaliatory eviction in this case. In our view, the defense of retaliatory eviction, in a forcible entry and detainer action, is in the nature of an equitable defense, rather than an absolute defense. It is a defense that, if established, may be weighed along with all the other equitable circumstances in determining whether to issue a writ of restitution. * * * [A] trial court might find that although the complaint to the health department had provided some part of the landlord's decision to seek eviction, it ought not to bar the eviction. In our view, the General Assembly has wisely decided that the outcome of eviction proceedings ought not to operate as a bar to other claims that either party may have against the other.

*Id.* at 19-20.

{¶ 82} This is not the situation here. It was not the "outcome of [the] eviction proceedings" that the trial court found precluded appellees from recovering their moving expenses, storage expenses and attorney fees related to the eviction action as part of their counterclaim in this case. It was the fact that the forcible entry and detainer action had been coupled with a second cause for damages — a cause of

action that had not been pursued or dismissed. *Cf. Green v. Findo*, 5th Dist. Licking No. CA-3629, 1991 Ohio App. LEXIS 4787, 11-12 (Sept. 26, 1991) (dismissing case where remaining cause of action by landlord sought damages from tenant that were duplicative of damages landlord sought in prior eviction case against tenant where second cause for damages was still pending). Accordingly, the trial court did not err in failing to award appellees moving expenses, storage expenses and attorney fees related to the eviction action on their counterclaim.[10]

---

[10] For this same reason, we question whether appellees should have been required to pursue their claim for unpaid rent in the eviction action rather than in this action. However, because appellants did not raise this issue in their appellate briefs, we need not address the issue here. An appellate court is '"not obliged to construct or develop arguments"' to support an appellant's assignment of error. *V.C. v. O.C.*, 8th Dist. Cuyahoga No. 109998, 2021-Ohio-1491, ¶ 89, quoting *State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 56 (8th Dist.); *see also McPherson v. Goodyear Tire & Rubber Co.*, 9th Dist. Summit No. 21499, 2003-Ohio-7190, ¶ 31. If an argument exists that can support an assignment of error, '"it is not this court's duty to root it out."' *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 72, quoting *Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028, 22 (May 6, 1998).

Moreover, because, as noted above, the complaint from the municipal court action is not part of the record in this appeal, we do not know precisely what was alleged or what damages were sought in the "second cause" in the eviction action. *Compare Fenner v. Kinney*, 10th Dist. Franklin Nos. 02AP-749 and 99CVF-036244, 2003-Ohio-989, ¶ 13 (case filed by landlord seeking eviction and unpaid rent up to date of eviction was distinct from case filed by the same landlord against the same tenant seeking compensatory damages for property damage and loss of rental income subsequent to the eviction). The issue is further complicated by the fact that Nachman did not file the eviction action, but rather, was substituted as the plaintiff in the eviction action after he purchased the property from FHLMC. Accordingly, it is unclear whether a claim for unpaid rent as to him would have been covered by the second cause for damages as pled. Where information or documents necessary to resolve an issue on appeal is not included in the record on appeal, we must presume regularity and affirm the trial court. *See, e.g., Urban Partnership Bank v. Mosezit Academy, Inc.*, 8th Dist. Cuyahoga No. 100712, 2014-Ohio-3721, ¶ 20. Accordingly, we do so here.

{¶ 83} Appellees' second, third, fourth and fifth cross-assignments of error are overruled.

{¶ 84} Judgment affirmed.

It is ordered that appellees/cross-appellants and appellants/cross-appellees share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
LISA B. FORBES, J., CONCUR