[Cite as *Haddad v. Maalouf-Masek*, 2024-Ohio-1983.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

TINA R. HADDAD,                          :

    Plaintiff-Appellant,          :          No. 113132

v.                                       :

NINA M. MAALOUF-MASEK,                   :

    Defendant-Appellee.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 23, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-919904

---

### *Appearances:*

Haddad Law Office and Tina Haddad, *pro se.*

Reminger Co., L.P.A., Timothy J. Gallagher, and Adam M.
Fried, *for appellee.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Plaintiff-appellant, Tina Haddad ("Tina"), appeals the trial court's order granting summary judgment in favor of defendant-appellee Nina M. Maalouf-Masek ("Nina") on Tina's claims arising out of Nina's alleged tortious interference with her expectancy of inheritance from their mother.

{¶ 2} For the reasons that follow, we affirm.

**Procedural and Factual Background**

{¶ 3} Tina and Nina are sisters. In 1995, their parents divorced. Shortly thereafter, their father was murdered. After their father died, Tina and Nina had joint ownership interests in the family business. In or around 1999, Tina bought out Nina's share of the family business. Tina and Nina's relationship thereafter deteriorated.

{¶ 4} On June 5, 2019, at the age of 85, their mother, Rosaline Haddad ("Rosaline"), died testate, with Tina and Nina as the sole heirs of her estate. In 2000, Rosaline executed a will that left her assets to Tina and Nina equally (the "2000 will"). In 2004, Rosaline executed a second will that revoked her prior will and left all of her assets — except for a $5,000 bequest to Tina — to Nina (the "2004 will"). The 2004 will contained a no-contest clause that stated that anyone who contested the will would receive only $1. The 2004 will named Nina as the executor of her mother's estate.

{¶ 5} In July 2019, the 2004 will was admitted to probate in the Cuyahoga County Court of Common Pleas, Probate Division, 2019 EST 244746. Nina was appointed executor of the estate.

**The General Division Action**

{¶ 6} On August 16, 2019, Tina filed the instant action, i.e., a "complaint for tortious interference with expectancy of inheritance," against Nina in the Cuyahoga County Court of Common Pleas, General Division. She filed an amended complaint on October 30, 2019, asserting claims for intentional interference with expectancy

of inheritance (the "IIEI claim"), unjust enrichment, conversion, constructive trust/accounting and damages under R.C. 2307.60(A) (the "general division action"). In her amended complaint, Tina alleged that Rosaline had suffered from a number of "serious health issues" that "made her particularly susceptible," including dementia and Alzheimer's disease, had "limited ability to read and write in English" and "relied heavily upon both her daughters for help with her daily life activities, financial and legal issues, and for emotional support." She further alleged that (1) Nina (with whom Rosaline had lived from 1998 until she was placed in an assisted living facility or nursing home in 2016 or 2017) had a "confidential relationship" with Rosaline and "complete access and control over" Rosaline's finances, bank accounts and other assets, (2) beginning in 2001, Nina "isolated" Rosaline, "bad-mouthed" Tina to Rosaline, prohibited Rosaline from seeing Tina and "threaten[ed]" Rosaline, (3) although Rosaline had had an estate worth nearly $2 million when she divorced, including "extensive amounts of jewelry, coins, and personal property," from 1998 until Rosaline's death, Nina "transferred," "diverted" and "depleted" Rosaline's assets, using Rosaline's funds for her own benefit, until there were no funds or assets remaining at Rosaline's death and (4) Nina "utilized her influence unduly" to compel Rosaline to change her will in 2004 from a "50/50 split" of assets shared between Tina and Nina to leaving virtually all of her assets to Nina. Tina claimed that Nina had "intentionally interfered with [Tina's] expectancy of an inheritance in [Rosaline's] will, bank accounts, and personal property," "exhibit[ing] undue influence and duress on Rosaline," that Nina had been "unjustly

enriched with Rosaline Haddad's assets" and that Nina had converted, "engaged in theft" and "embezzled money and property * * * that was Rosaline's, including bank accounts, jewelry, furs, and rings."

{¶ 7} With respect to what assets Nina "transferred," "diverted" and "depleted" and how Nina wrongfully "transferred," "diverted" and "depleted" Rosaline's assets for her own benefit, the amended complaint specifically alleged, in pertinent part:

> 27. Conservatively, the estate of Rosaline Haddad had in excess of 2 million dollars.
>
> * * *
>
> 36. Between 2010 or 2012, Defendant had transferred some of Rosaline Haddad's bank accounts into joint and survivorship bank accounts under the names Rosaline Haddad and Nina Maalouf, joint with right of survivorship. These accounts were at Huntington National Bank. Defendant did not put any of her own money into the accounts. By 2014, Defendant had transferred Mom's $150,000 Certificate of Deposit at Third Federal into other financial institutions.
>
> 37. Between 2010 and 2012, Defendant utilized the services of bankers at Huntington National Bank and socialized with the bankers.
>
> 38. Beginning in 2012, and through 2013, 2014, 2015, 2016, and 2017 Defendant wrote numerous checks payable to "Cash" from the joint and survivorship accounts for unaccounted purposes. Some of these included a check for cash in December, 2015 for over $93,238.18; checks to cash for herself to purchase property located at 4963 E. 71st, Cuyahoga Heights, Ohio, and checks in 2017 to the Brunswick Auto Mart. None of these checks appear to be for Rosaline Haddad's care or benefit. Upon information and belief, Defendant diverted Rosaline Haddad's funds to other banks from 1998 to 2019.
>
> * * *
>
> 44. Throughout 2015-2019, Defendant depleted the joint and survivorship bank accounts at Huntington National Bank to the point

there were little or no funds remaining. The checks are payable to cash and the funds are unaccounted for.

\* \* \*

48. Rosaline Haddad had extensive amounts of jewelry, coins, and personal property. All of that personal property, including all family photos, has been kept by Defendant and none shared or divided with Plaintiff. None of the items have been accounted for. Defendant has several times claimed that there were no assets owned "solely" by Rosaline Haddad and that Rosaline Haddad's estate has assets worth $0.00.

49. Upon information and belief, Defendant has distributed Rosaline Haddad's property to her husband, her own children, and step-children.

\* \* \*

55. Defendant has been unjustly enriched with Rosaline Haddad's assets, including bank accounts that became joint with right of survivorship, spending the bank accounts with numerous "cash" payments, particularly a 2015 check for over $93,000 to cash, an automobile purchase in 2017 when Rosaline Haddad had no license and was not driving, and payments of property taxes on other properties from Rosaline Haddad's account that was not titled in Rosaline Haddad's name. Rosaline Haddad did not gift these funds to Defendant and they were not compensation for services rendered. It is unjust for Defendant to gain the benefit of these assets.

\* \* \*

58. Defendant had a confidential relationship with her mother for over twenty years and controlled all of her mother's finances, bank accounts, assets. As such, she shifted bank accounts from Third Federal to Huntington National Bank and, upon information and belief, other financial institutions, used Rosaline Haddad's assets for her own purposes and not for the benefit of Rosaline Haddad. Numerous checks were written to cash. Out of the hundreds of thousands of dollars, there was no accounting. Defendant never filed for a guardianship and has had unfettered control. All of Rosaline Haddad's furs, jewelry, and items in her divorce decree have disappeared.

\* \* \*

61. Defendant took Rosaline's bank accounts and assets from the 1994 divorce settlement and put them into joint with right of survivorship accounts, payable on death accounts. She has taken all of Rosaline's jewelry, furs, furniture, belongings and deems them as her own.

\* \* \*

64. Defendant has engaged in theft and/or embezzled money and property and that was Rosaline's, including bank accounts, jewelry, furs, and rings.

65. In late 2015, Defendant bought an apartment building in Cuyahoga Heights for $220,000 and put a mortgage of $120,000. At the time, she wrote a check to Guardian Title for $5,000 and a check to Cash for $93,000. Title was placed in the name of Defendant and her husband, Billy Masek, even though it appears that the $100,000 down payment was likely from Rosaline's Huntington National Bank account. There is no benefit at all to Rosaline from the transaction. Similarly, in 2017, Defendant wrote checks to the Brunswick Auto Mart for a car and an extended Warranty. Rosaline Haddad was not driving and did not have a license and there appears to be no benefit to Rosaline Haddad. There are numerous transactions payable to "cash" where Defendant signed Rosaline's name even though it is clear that Rosaline did not sign the check or had no idea what the check was for.

{¶ 8} Tina averred that Rosaline "was a loving mother who loved both her children," that despite Nina's interference, Tina had regular contact with Rosaline from 2001-2009 and that there was "a reasonable certainty that but for [Nina's] interference and conduct," Tina "would have realized her expected inheritance of 50% of her mother's estate." Tina sought to recover compensatory and punitive damages from Nina, the imposition of a constructive trust on Rosaline's assets and Nina's "misappropriation of them since 1998," an accounting of Rosaline's assets

and  expenditures and an award of attorney fees and costs.  Copies of the 2000 will and the 2004 will were attached to the amended complaint.[1]

{¶ 9}  On November 13, 2019, Nina filed a motion to dismiss the amended complaint pursuant to Civ.R 12(B)(1) and (6).  Nina argued (1) that Tina's IIEI claim was not ripe because, under Ohio law, a plaintiff must first exhaust his or her probate or equitable remedies before he or she can pursue an IIEI claim and Tina had not pursued any probate or equitable remedies, (2) because the claims asserted by Tina in the amended complaint, "necessarily deal with the assets of her mother's estate," Tina lacked standing to bring them and the general division "lack[ed] jurisdiction to hear them" and (3) even assuming all of the allegations in the amended complaint were true, they failed to state a claim for which the trial court could grant relief to Tina.  Nina also filed a motion to stay discovery pending a ruling on her motion to dismiss, arguing that the motion to dismiss tested the sufficiency of the complaint and no discovery was needed to oppose it.  Tina opposed the motions.

{¶ 10}  With respect to Nina's motion to dismiss, Tina argued that (1) she had standing because she could prove the elements of an IIEI claim and had "a personal stake in the outcome of the case," (2) a will contest would be futile because Nina had represented that there were "no assets to probate" and (3) her allegations were sufficient to state a claim for relief as to each of the causes of action asserted in the

---

[1] The amended complaint indicated that the "Divorce Decree of Rosaline Haddad in 1994" was attached as Exhibit C.  However, the copy of the amended complaint that is in the record does not include an "Exhibit C."  A copy of the agreed judgment entry from Rosaline's divorce, dated August 16, 1995, was submitted with Tina's opposition to Nina's motion for summary judgment.

amended complaint. With respect to Nina's motion to stay discovery, Tina argued that the trial court had instructed the parties to proceed with discovery and that the discovery she had served consisted of third-party subpoenas seeking financial information relating to Rosaline, which imposed no burden on Nina. On December 6, 2019, Nina filed a motion for protective order with respect to requests for admissions Tina had served on Nina and a motion to quash the subpoenas Tina had served on the financial institutions. Once again, Tina opposed the motions.

**The Will-Contest Action Filed in the Probate Division**

{¶ 11} On December 3, 2019, Tina filed a will contest action in the Cuyahoga County Court of Common Pleas, Probate Division, in Cuyahoga C.P. No. 2019 ADV 248638 (the "will contest action"), asserting that the 2004 will was the product of undue influence by Nina and that Rosaline had lacked testamentary capacity to execute the 2004 will.[2] Tina requested that the 2004 will be set aside, that the 2000

---

[2] In *Haddad v. Maalouf-Masek*, 2022-Ohio-4085, 200 N.E.3d 1276, ¶ 6-7 (8th Dist.), this court described Tina's allegations in the will contest action as follows:

In support of her undue-influence claim, Tina pertinently alleged that (1) Rosaline received over $2 million in her divorce settlement that was initiated in 1994; (2) Rosaline suffered from "serious health issues"; (3) Rosaline had limited ability to read and write in English; (4) Rosaline moved in with Nina in 1998 and remained there until she was placed in a nursing home; (5) Nina isolated Rosaline from Tina, "bad-mouthed" Tina, prohibited Rosaline from seeing Tina, and threatened to take Rosaline's grandchildren away if she associated with Tina; (6) Nina controlled "almost every aspect of her mother's life," including all of Rosaline's finances, emails, letters, and communications; (7) despite Nina's threats, Rosaline maintained contact with Tina between 2001-2009; (8) Nina's control over Rosaline's bank accounts included transferring some of Rosaline's bank accounts into joint and survivorship bank accounts with Nina; (9) "sometime between 2012 and 2017," Rosaline had dementia which had gotten so bad that she could no longer drive and was exclusively dependent on Nina; and (10) from 2012

will be reinstated and that she be awarded a 10 percent surcharge and compensatory damages, prejudgment interest, attorney fees and costs.

{¶ 12} On December 11, 2019, the trial court issued an order staying the general division action until the will contest action was resolved. As corrected (via a nunc pro tunc entry on March 9, 2020), the order stated:

> As plaintiff has filed a will contest complaint * * *, all matters in this case are hereby stayed. All pending motions will be held in abeyance. Court to reinstate case to the active docket upon motion following the probate court's resolution of all claims before it under Case No. 2019 ADV 248638.

{¶ 13} The will contest action proceeded to trial in March 2022. On March 10, 2022, a jury returned a verdict finding the 2004 will to be valid and that it was not the result of undue influence.[3] On April 5, 2022, the probate court entered judgment on the jury's verdict. Tina appealed to this court, arguing that the trial court had given erroneous jury instructions, that the trial court had erred in admitting hearsay testimony and that the trial court had erred and abused its discretion in limiting discovery and the evidence presented at trial to the time period 2003-2005. *Haddad,* 2022-Ohio-4085, 200 N.E.3d 1276, at ¶ 28.

---

through 2017, Nina wrote numerous checks payable to cash from her joint and survivorship accounts with Rosaline.

In support of her contention that Rosaline lacked testamentary capacity, Tina alleged that Rosaline suffered from strokes and heart ailments, mental health issues, dementia, and was "functionally illiterate."

[3] At the close of Tina's case-in-chief in the will contest action, Nina moved for a directed verdict on the lack-of-testamentary-capacity claim due to a lack of evidence, and Tina agreed to drop the claim. The trial continued on Tina's claim that the 2004 will was the product of undue influence. *Haddad* at ¶ 19.

{¶ 14} A final account was filed in Rosaline's estate on June 23, 2022, which showed a distribution of $1 to Tina. The probate court approved the final account on August 2, 2022.

{¶ 15} On November 17, 2022, this court affirmed the probate court's judgment. *Id.* at ¶ 59-60.

**Summary Judgment Proceedings in the General Division Action**

{¶ 16} On May 26, 2023, Tina filed a "motion to lift stay of proceedings and reinstate case to active docket," indicating that the will contest had been litigated and that the probate court's decision was final.

{¶ 17} On May 30, 2023, Nina filed a "motion to lift stay and motion to convert motion to dismiss to motion for summary judgment." She requested that the trial court convert her previously filed motion to dismiss plaintiff's amended complaint into a motion for summary judgment and that it consider "supplemental arguments and facts" from the probate court proceedings that she contended supported judgment in her favor. Specifically, Nina argued that because the 2004 will was deemed valid in the will contest action and, because Tina had received her expected inheritance under the 2004 will, i.e., $1, she had not suffered any damages and could not prove the elements of her IIEI claim as a matter of law. Nina argued that res judicata/issue preclusion barred relitigation of any issues decided in the probate court proceedings, including "which assets are owed to the Estate" and whether there was "wrongdoing by [Nina] that affected [Tina's] inheritance through her mother's estate," and that Tina's remaining claims were now "moot." Nina

pointed out that Tina had never objected to the inventory of estate assets (which identified $0 in estate assets) and that, even if Nina had received any improper inter vivos transfers of Rosaline's probate assets, the remedy would be to return those assets to Rosaline's estate. Likewise, Nina argued, if she had made any improper distributions from Rosaline's bank accounts, the remedy would be to return those funds to those accounts. Given that Tina's inheritance under the will was limited to $1 and given that there was no evidence Tina was ever a joint owner or beneficiary of any of Rosaline's bank accounts, Nina asserted that Tina did not have "any possible damages" on any of her claims because she "couldn't receive any more than she already has through her mother's estate." She asserted that "[o]nly if [Tina] had proved that the 2004 Will was invalid would her inheritance increase."

{¶ 18} In support of her motion, Nina attached an affidavit from her counsel, in which he detailed the procedural history of the will contest action, described the circumstances surrounding the probate court's approval of the inventory and the account filed in the administration of Rosaline's estate and averred that Tina "has received her full inheritance under the terms of [the 2004 will]." Nina's counsel also authenticated several documents, copies of which he attached to his affidavit, including: (1) the probate court's judgment entry in the will contest action, (2) this court's decision in *Haddad*, 2022-Ohio-4085, 200 N.E.3d 1276, (3) the inventory for Rosaline's estate (stating "[n]o probate assets as of the filing of the [i]nventory"), (4) the probate court's November 21, 2019 judgment entry approving the inventory, (5) the first partial account for the administration of Rosaline's estate (listing "no

assets"), (6) the probate court's May 12, 2021 judgment entry approving and settling the partial account, (7) the final account of the administration of Rosaline's estate (listing a $1 advance from the executor, a $1 distribution to Tina pursuant to the will and no remaining assets), (8) the probate court's July 29, 2022 judgment entry overruling Tina's exceptions to the final account[4] and (9) the probate court's August 2, 2022 judgment entry approving and settling the final account.

{¶ 19} Tina did not oppose Nina's motion to lift the stay or her motion to convert her motion to dismiss into a motion for summary judgment. On June 14, 2023, the trial court granted the parties' motions to lift the stay, and Nina's motion to dismiss was converted into a motion for summary judgment. Tina did not request a continuance to conduct further discovery or otherwise seek relief under Civ.R. 56(F) prior to responding to Nina's motion for summary judgment.

{¶ 20} On July 12, 2023, Tina filed her opposition to Nina's motion for summary judgment. Tina asserted that Nina had not met her burden under Civ.R. 56(C) and that, construing the evidence most strongly in Tina's favor, there were

---

[4] Tina did not object to the inventory or first partial account and did not otherwise claim that any assets were missing from the estate in the administration of Rosaline's estate. Tina's exceptions to the final account were based on the pendency of her appeal in the will contest action. In overruling her exceptions, the probate court stated:

> The Court finds that the reason stated for the Exceptions is that a proceeding contesting the validity of Decedent's Will is pending. The Court finds that the Will Contest action was resolved by jury verdict and Entry of this Court on March 10, 2022. The Court finds that although an appeal has been taken, no stay has been ordered by this Court or in the Court of Appeals.

> The Court finds that the Exceptions to Account are not well taken and are hereby denied and dismissed.

genuine issues of material fact with respect to each of the claims asserted in her amended complaint that precluded summary judgment. Tina argued that her claims in the general division action were not barred by res judicata because "[t]he will contest did not determine the merits of the matters brought forth in the Amended Complaint, the Probate Court had no jurisdiction to hear [such] matters and the matters before [the trial court in the general division action] involve[d] different time periods and events." Specifically, Tina argued that the ruling in the will contest action did not preclude relief in the general division action because (1) the "[p]robate proceedings had a limited discovery period from 2003-2005," (2) the "[t]he instant case * * * contemplates conduct by the defendant outside of the time period restrictions set by the Probate Court," (3) most of Rosaline's assets had been nonprobate assets, e.g., joint and survivorship bank accounts, (4) Tina's claims in the general division action arose out of Nina's "intentional interference with [Tina's] expectancy of an inheritance as it related to non-probate assets, post 2005," not Rosaline's probate estate and (5) the will contest action did not determine whether Nina intentionally interfered with Tina's expectancy of inheritance as it related to those non-probate assets. In her opposition, Tina described Nina's alleged wrongdoing as follows:

> [Nina] intentionally took possession of Rosaline Haddad's assets including non-probate assets outside of the period of the will contest and without Rosaline Haddad's consent. * * * [Nina] picked Rosaline's estate clean prior to Rosaline's death and probated an estate with no probate assets. [Nina] was never required to account for all the non-probate assets and her many years of interfering with [Tina's] inheritance.

**{¶ 21}** In support of her opposition, Tina submitted copies of (1) the probate court's April 30, 2020 order, which limited discovery in the will contest action to the issues of undue influence and lack of testamentary capacity for the time period 2003-2005 "unless Plaintiff can demonstrate that evidence outside that time frame is relevant to the issues in [the] case," (2) this court's decision in *Haddad*, 2022-Ohio-4085, 200 N.E.3d 1276, (3) an agreed judgment entry from Rosaline's divorce, dated August 16, 1995, identifying, among other things, the property distributions to each party in connection with the divorce, (4) an affidavit from Nina's former friend, Jacqueline Aude (dated Sept. 16, 2020), (5) affidavits from two of Rosaline's former coworkers in the family business, Sue David (dated May 9, 2020) and Alba Alaya (dated Apr. 8, 2021), who had "interacted with [Rosaline] regularly at work,"[5] (6) an excerpt from Nina's deposition in the will contest action in which Nina claimed that Rosaline had gifted her jewelry sometime after 2005 and (7) her own affidavit (dated July 12, 2023), attaching copies of (a) an expert report prepared by Stephen G. Noffsinger, M.D. (dated Mar. 13, 2001) in connection with the will contest action,[6] (b) excerpts from Rosaline's federal income tax returns for 2003-

---

[5] The affidavits of Aude, David and Alaya were captioned for the will contest action. Accordingly, many of the statements in their affidavits are focused on the matters that were at issue in the will contest, i.e., Rosaline's testamentary capacity and Nina's alleged exercise of undue influence. In their affidavits, David and Alaya do not indicate a time frame for when they "interacted with [Rosaline] regularly at work," but in her appellate brief Tina asserts that Rosaline stopped working in the family business in 2002.

[6] In his expert report, Noffsinger opined that "Rosaline Haddad was vulnerable to undue influence on 10/27/04 when she signed her Last Will and Testament" and "[t]he changes in Rosaline Haddad's 10/27/04 Last Will and Testament, when compared to her

2013, which Tina stated she had obtained via subpoena from an accounting firm in 2020, and (c) a chart Tina prepared summarizing Rosaline's income from 2003-2013 as reported on her tax returns.[7]

{¶ 22} In her affidavit, Tina averred that she had an "expectancy of inheritance" from her mother because her mother had told her that both she and her sister "would be taken care of equally,"[8] that "historically," her mother had treated her and Nina equally, i.e., that "[i]f Nina got something, so did I," that she did not know until 2019 that her mother had executed the 2004 will that "disinherited" her and that, "[b]ut for Nina's wrongful acts and tortious interference," Tina "would have realized [her] expectancy."

{¶ 23} Tina averred that when the general division action began and "discovery started," she learned that Nina had transferred Rosaline's assets, which had previously been in Rosaline's name alone, into jointly owned assets with Nina as co-owner, that her mother's 2003-2013 federal income tax returns "showed a systematic depletion" of Rosaline's assets and that, after 2005, "Nina took control and drained [her] mother's assets to the point where she was co-owner or [had] completely taken control of certain assets." Tina claimed that she had had a "close

_____

2000 Last Will and Testament, are consistent with undue influence being exerted." As indicated above, the jury disagreed.

[7] Tina filed Nina's deposition transcript with the trial court but only cited one excerpt from it in her opposition. Tina also "incorporate[d] by reference" her amended complaint and her opposition to Nina's motion to dismiss.

[8] Tina does not indicate when Rosaline made this statement.

relationship" with her mother until Nina began to undermine that relationship in 2001 and that "[a]lthough forbidden to see her," Rosaline would "sneak" to see her "until she could no longer drive."[9]  Tina averred that Nina had "never presented a valid durable power of attorney for [their] mother" and that she had "returned the $1" Nina had distributed to her from their mother's estate.

{¶ 24} In her affidavit, Aude averred that she and Nina used to be "very close friends," that she met Rosaline "sometime in the 1990s" and that from the late 1990s until 2013, she "visited regularly" with Rosaline.  She further averred that "sometime in the early 2000s," Nina and Tina had a falling out, that Nina "constantly bad-mouthed" Tina to Rosaline, "made all decisions" for Rosaline and "controlled every aspect" of Rosaline's life and that although Nina had limited contact between Rosaline and Tina, Rosaline, nevertheless, continued to "regularly communicate and visit" Tina until "at least 2007," when Rosaline's "mental capacity began to rapidly deteriorate."  Aude stated that "[o]n multiple occasions," Rosaline had showed her "a 20-drawer safe in her basement that included valuable jewelry, gold, and [loose] diamonds,"[10] that Nina had "used" Rosaline's money and "transferred it to Huntington Bank to impress a banker with whom she had an intimate relationship" and that Rosaline had "historically treated her two daughters equally" such that "[i]f one got something, so did the other."  She indicated that, in her

---

[9] Once again, the affidavit does not indicate when this occurred.

[10] Aude does not indicate during what time frame this occurred.

opinion, "[Rosaline] would not have disinherited Tina" and that Nina had been "plotting to obtain all of her mother's assets to the exclusion of Tina" "for years."

{¶ 25} In their affidavits, David and Alaya averred, in relevant part, that Nina "controlled most aspects of [Rosaline's] life" and that Nina "constantly tried to drive a wedge between [Rosaline] and Tina." They stated that although Nina told Rosaline she could not visit Tina, Rosaline continued to visit Tina in secret after the sisters' falling out. They indicated Tina and Nina were "historically treated equally by their parents" such that "[i]f one got something, so did the other" and that during one of her visits to the shop Rosaline "confided" to David and Alaya that her will "left everything to her daughters 50/50."[11]

{¶ 26} Tina argued that based on the evidence she presented, the trial court should "infer" that (1) "there were non-probate assets and legitimate expectations of inheritance via gift or survivorship accounts" and (2) "there was unjust enrichment, conversion, and theft."

### Trial Court's Ruling on Summary Judgment in the General Division Action

{¶ 27} On August 2, 2023, the trial court granted Nina's motion for summary judgment, "determin[ing] that there remain no genuine issues of material fact to be litigated and defendant is entitled to judgment as a matter of law." The

---

[11] The affidavits do not indicate when Rosaline made these statements to David and Alaya, i.e., whether they were made before or after Rosaline executed the 2004 will.

trial court entered summary judgment in favor of Nina and against Tina "as to all claims." The trial court did not otherwise explain the basis for its ruling.

{¶ 28} Haddad appealed, raising the following three assignments of error for review:

Assignment of Error No. 1
The trial court erred to the prejudice of Appellant in granting Defendant's Motion for Summary Judgment based ostensibly on the affirmative defense of res judicata in that 1) Defendant did not meet its *Dresher* burden; 2) the Civil Rule 56(C) evidence Plaintiff submitted showed that there were genuine issues of material fact and 3) res judicata did not apply to the probate proceedings.

Assignment of Error No. 2
The trial court erred to the prejudice of Plaintiff in lifting the stay and not allowing Plaintiff discovery on its stayed discovery requests where the summary judgment record and briefing showed the probate matters had limited discovery, did not involve the IIEI causes of actions, [and] were not within the probate court's subject matter jurisdiction.

Assignment of Error No. 3
The lower court erred to the prejudice and rendered illusory Appellant's rights to causes of action under Ohio Supreme Court cases *Firestone v. Galbraith* and *Jacobson v. Kaforey*. Transforming res judicata into a docket-clearing device club beyond limits, as applied to Appellant, the lower court violated Appellant's right to remedy under Art. I, Section 16 of the Ohio Constitution both in denying any remedy and in creating undue delay.

**Law and Analysis**

**Ruling on Summary Judgment Without Allowing Tina to Conduct Additional Discovery**

{¶ 29} For ease of discussion, we consider Tina's second assignment of error first. In her second assignment of error, Tina contends that the trial court erred in

lifting the stay and ruling on Nina's motion for summary judgment without allowing her to conduct additional discovery. Tina's argument is meritless.

{¶ 30} If a party opposing a summary judgment motion "'finds itself having to respond to a summary judgment motion before adequate discovery is completed'" or otherwise requires additional time to present evidence of facts necessary for his or her opposition to summary judgment, the party may seek relief under Civ.R. 56(F). *Commons at Royal Landing, LLC v. Whitehall*, 10th Dist. Franklin No. 15AP-240, 2016-Ohio-362, ¶ 8, quoting *Taylor v. XRG, Inc.*, 10th Dist. Franklin No. 06AP-839, 2007-Ohio-3209, ¶ 16.

{¶ 31} Civ.R. 56(F) provides:

Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

{¶ 32} In other words,

Civ. R. 56[F] affords a party a mechanism whereby it can seek deferral of action on a motion for summary judgment so that it may obtain affidavits opposing the motion or conduct discovery relevant to it. * * * Civ. R. 56(F) requires the opposing party to submit affidavits with sufficient reasons stating why it cannot present by affidavit facts sufficient to justify its opposition. Mere allegations requesting a continuance or deferral of action for the purpose of discovery are not sufficient reasons why a party cannot present affidavits in opposition to the motion for summary judgment. There must be a factual basis stated and reasons given why it cannot present facts essential to its opposition to the motion. If this is done, the trial court has several alternatives. It may refuse the application for summary judgment; it may order a continuance to permit affidavits to be obtained in opposition to the motion for summary judgment; it may grant a

continuance for further discovery; or it may make such other order as is just. These are all within the trial court's discretion and are not mandatory. Civ. R. 56(F).

*Gates Mills Inv. Co. v. Pepper Pike*, 59 Ohio App.2d 155, 168-169, 392 N.E.2d 1316 (8th Dist.1978). *But see Prohazka v. Ohio State Univ. Bd. of Trustees*, 10th Dist. Franklin No. 03AP-616, 2004-Ohio-1601, ¶ 30-31 (where plaintiff did not submit a supporting affidavit, "[t]he trial court was without authority to provide plaintiff with relief under Civ.R. 56(F)").

{¶ 33} On page 10 of her opposition to Nina's motion for summary judgment, Tina referenced a need for additional discovery to support her claims. She stated:

> Rosaline's tax returns show she had bank accounts, but *discovery is needed* for the beneficiary designations and changes thereto. Defendant has never provided those and has impeded this discovery claiming it is outside 2003-2005, (in the Probate litigation), and here (refusing to respond to discovery requests) and discovery had stopped due to the stay.

(Emphasis added.)

{¶ 34} Tina, however, did not file a motion for continuance pursuant to Civ.R. 56(F), she did not submit an affidavit pursuant to Civ.R. 56(F) explaining her need for additional discovery to obtain facts necessary to oppose Nina's summary judgment motion,[12] she did not oppose Nina's motion to convert her motion to dismiss into a motion for summary judgment and, although she reportedly served

---

[12] Although Tina submitted an affidavit with her opposition to Nina's motion for summary judgment, as detailed above, she not indicate, in her affidavit, that she needed further discovery to present facts essential to her opposition.

requests for admission on Nina prior to the stay, she did not seek to have the stay lifted with respect to those requests and did not engage in any additional discovery after the stay was lifted.[13] There is nothing in the record to indicate that Tina had served any interrogatories or requests for production on Nina, had issued any additional third-party subpoenas or had noticed any depositions prior to filing her opposition brief.

{¶ 35} As the Tenth District explained in *Nationstar Mtge. LLC v. Payne*, 10th Dist. Franklin No. 16AP-185, 2017-Ohio-513, ¶ 16, a party who fails to seek relief in the trial court under Civ.R. 56(F) based on a need for discovery fails to preserve the issue for appeal:

> Generally, Civ.R. 56(F) provides the sole remedy for a party who must respond to a motion for summary judgment before it has completed adequate discovery. *Mootispaw v. Mohr*, 10th Dist. Franklin No. 15AP-885, 2016-Ohio-1246, ¶ 10; *Commons at Royal Landing, LLC v. Whitehall*, 10th Dist. Franklin No. 15AP-240, 2016-Ohio-362, ¶ 8. Pursuant to Civ.R. 56(F), a party may request that the trial court defer ruling on the motion for summary judgment pending the completion of discovery. *Mootispaw* at ¶ 10; *Commons at Royal Landing* at ¶ 9. When a party fails to move for a Civ.R. 56(F) continuance, a trial court may grant summary judgment to the moving party even if discovery remains incomplete. *Mootispaw* at ¶ 10; *Commons at Royal Landing* at ¶ 11. * * * [T]he party that fails to move for a Civ.R. 56(F) continuance does not preserve his right to challenge the adequacy of discovery on appeal. *Mootispaw* at ¶ 10.

---

[13] Requests for admission are self-executing. *See, e.g., Riddick v. Taylor*, 2018-Ohio-171, 105 N.E.3d 446, ¶ 22 (8th Dist.). Accordingly, contrary to Tina's assertion in her opposition, Nina could not have simply "refus[ed] to respond" to them. If Nina failed to respond to Tina's requests for admission, the requests would be deemed admitted. *See* Civ.R. 36(A)(1); *see also Black v. Hicks*, 2020-Ohio-3976, 157 N.E.3d 193, ¶ 65 (8th Dist.) ("Under Civ.R. 36(A), * * * if a party fails to respond to a request or an admission, the matter is automatically deemed admitted and no further action is required by the party requesting it.").

*See also Maschari v. Tone*, 103 Ohio St.3d 411, 2004-Ohio-5342, 816 N.E.2d 579, ¶ 20 ("'[A] party who fails to seek relief under Civ.R. 56(F) in the trial court does not preserve its rights thereto for purposes of appeal.'"), quoting *Taylor v. Franklin Blvd. Nursing Home, Inc.*, 112 Ohio App.3d 27, 30, 677 N.E.2d 1212 (8th Dist.1996); *WFG Natl. Title Ins. Co. v. Meehan*, 2018-Ohio-491, 107 N.E.3d 60, ¶ 19 (8th Dist.) ("If an opposing party requires additional time to produce facts essential to the opposition motion, the party may seek a continuance under Civ.R. 56(F). * * * A party who fails to seek relief under Civ.R. 56(F) in the trial court fails to preserve the issue on appeal."); *Jackson v. Walker*, 9th Dist. Summit No. 22996, 2006-Ohio-4351, ¶ 17 ("A party needing evidence to oppose a motion for summary judgment, but 'who fails to seek relief under Civ.R. 56(F) in the trial court does not preserve his rights under the rules for purposes of appeal.'"), quoting *R&R Plastics, Inc. v. F.E. Myers Co.*, 92 Ohio App.3d 789, 798, 637 N.E.2d 332 (6th Dist.1993).

{¶ 36} Because Tina did not seek relief under Civ.R. 56(F), the trial court did not err in granting Nina's motion for summary judgment even though Tina had not obtained the discovery she "sought or planned to seek." *Payne* at ¶ 17.

{¶ 37} Tina's second assignment of error is overruled.

**Trial Court's Decision on Summary Judgment**

{¶ 38} In her first assignment of error, Tina contends that the trial court erred in granting Nina's motion for summary judgment because (1) Nina did not meet her burden, as the moving party, under Civ.R. 56(C), (2) the Civ.R. 56(C) evidence Tina submitted showed that there were genuine issues of material fact for

trial, (3) res judicata did not bar her causes of action based on the probate proceedings and (4) under *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996), any inferences regarding the evidence must be construed in her favor.

**Standard of Review**

{¶ 39} We review summary judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We accord no deference to the trial court's decision and conduct an independent review of the record to determine whether summary judgment is appropriate.

{¶ 40} Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law. *Id.* On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment. *Dresher* at 292-293. If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party has the reciprocal burden to point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293. "Material facts are those facts that might affect the outcome of the suit under the governing law of the case." *Werman v. Green*, 11th Dist. Lake No. 2000-L-033, 2001 Ohio App. LEXIS 1555, 3 (Mar. 30,

2001).  Summary judgment is appropriate if the nonmoving party fails to meet this burden.  *Dresher* at 293.

**Evidence (or Lack of Evidence) to Support Claims Asserted in the General Division Action**

{¶ 41}  In her amended complaint, Tina asserted five counts against Nina: (1)  an IIEI claim, (2) unjust enrichment, (3) conversion, (4) damages under R.C. 2307.60(A) and (5) constructive trust/accounting.

{¶ 42}  Tina argues that Nina failed to meet her "initial *Dresher* burden" on summary judgment because (1) she "provided no pleadings, * * * no stipulations, no answers to interrogatories * * * [,] no transcripts of evidence" and no affidavit denying that she engaged in the conduct alleged in the amended complaint, (2) "[n]one of [Nina's] Civ.R. 56(C) materials speak to an expectancy of inheritance" and (3) Nina's Civ.R. 56(C) materials "flow from a false assumption that all Rosaline's assets were probate assets."

{¶ 43}  Nina responds that the trial court could have dismissed Tina's claims based on the allegations of her amended complaint alone but that because Nina also relied on the facts of Rosaline's estate administration and the results of the will contest action to support her legal arguments — evidence of facts outside the four corners of Tina's amended complaint — she requested that the trial court convert her motion to dismiss into a motion for summary judgment.  Nina asserts the trial court properly granted summary judgment on Tina's IIEI claim because (1) her "complaint makes it clear" that her IIEI claim was based on an expectancy of

inheritance from her mother's probate estate, (2) the only "expectancy of inheritance" Tina could have had, given that the 2004 will was determined to be valid in the probate court action, was the inheritance specified in the will, i.e. $1, and (3) Tina realized that inheritance in full, following her mother's death. With respect to Tina's other causes of action, Nina asserts that the trial court properly granted summary judgment on those claims because they were "based on allegations of acts between [Nina] and Rosaline," i.e., that Nina "did some wrong to Rosaline or Rosaline's property," not based on any conversion, misappropriation or theft of any property owned by Tina. (Emphasis deleted.)

{¶ 44} Tina acknowledges that she cannot relitigate, in this case, the probate court's determination in the will contest action that the 2004 will was valid and was not the product of undue influence by Nina. Appellant's Brief at 16 ("Collateral estoppel is quite limited here and only applies to the 2004 [w]ill and the ruling that it was not the product of undue influence. That is all the jury decided."); *see also In re Estate of Goehring*, 7th Dist. Columbiana Nos. 05 CO 27 and 05 CO 35, 2007-Ohio-1133, ¶ 67 ("The tort of intentional interference with the expectancy of inheritance cannot be used to bypass the probate court or to overturn the probate court's determination of the validity of a will due to the probate court's exclusive jurisdiction in these areas."). However, Tina argues that res judicata did not bar her claims in the general division action because none of those claims could have been brought in the will contest action and "a will contest and an IIEI proceeding are completely different causes of action, with different parties, different elements of

proof, and burdens of proof." Tina contends that Nina mischaracterizes her IIEI claim and asserts that, based on the allegations of her amended complaint, her "expectancy of inheritance" was "more than what was in the will" and that their mother had "substantial" non-probate assets of which there was a reasonable certainty Tina would have realized "an expected inheritance of 50%" were it not for Nina's interference, diversion, conversion and theft. Tina asserts that trial court was required to draw all inferences from the evidence in her favor, including "inferences" that "there were non-probate assets," that Tina had "legitimate expectations of inheritance via gift or survivorship accounts" and that "there was unjust enrichment, conversion, and theft," and that the trial court erred in failing to do so.

{¶ 45} Contrary to Tina's assertion, to prevail on her motion for summary judgment, Nina was not required to present affidavits or other evidence disproving the allegations of wrongdoing in Tina's amended complaint. *See* Civ.R. 56(B) ("A party against whom a claim * * * is asserted * * * may, at any time, move with or *without supporting affidavits* for a summary judgment in the party's favor as to all or any part of the claim * * * .") (emphasis added); Civ.R. 56(C) ("Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, *if any*, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.") (emphasis added). Rather, Nina, as the moving party, bore the initial burden of informing the trial court of the basis for her motion and identifying

those portions of the record (referencing proper Civ.R. 56(C) materials) that demonstrated the absence of a genuine issue of material fact relevant to the basis on which she moved for summary judgment. Summary judgment may be granted in favor of a defendant where the pleadings, other relevant Civ.R. 56(C) materials and the applicable law clearly establish that the plaintiff has no legally cognizable cause of action against the defendant based on the alleged facts.

{¶ 46} As discussed in greater detail below, Nina met her initial burden under Civ.R. 56(C) by pointing to Civ.R. 56(C) materials — i.e., Tina's amended complaint and the affidavit of Nina's counsel attaching copies of the judgment entries from the will contest action and the administration of Rosaline's estate — that showed that Tina could not establish essential elements of her claims against Nina and that Nina was, therefore, entitled to judgment as a matter of law. This triggered Tina's reciprocal burden to point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial on her claims. *See* Civ.R. 56(E) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."). Tina, however, did not meet her burden here. While the nonmoving party to a summary judgment motion is entitled to all reasonable inferences in his or her favor, an inference can only be made if it is

reasonable and based on established facts. *Krause v. Marc Glassman, Inc.*, 8th Dist. Cuyahoga No. 85991, 2005-Ohio-5989, ¶ 8, citing *Hurt v. Rogers Transp. Co.*, 164 Ohio St. 329, 332, 130 N.E.2d 820 (1955). Viewing the evidence in the light most favorable to Tina, we find that there are no genuine issues of material fact and that Tina cannot prevail on any of her claims against Nina as a matter of law. Accordingly, the trial court did not err in entering summary judgment in favor of Nina.

### Intentional Interference with Expectancy of Inheritance

{¶ 47} "'One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift.'" *Firestone v. Galbreath*, 67 Ohio St.3d 87, 88, 616 N.E.2d 202 (1993), quoting Restatement of the Law 2d, Torts, Section 774B, at 58 (1979).

{¶ 48} To prevail on an IIEI claim, a plaintiff must prove the following elements: (1) the existence of an expectancy of inheritance in the plaintiff, (2) an intentional interference by the defendant with that expectancy of inheritance, (3) conduct by the defendant involving the interference that is tortious in nature, such as fraud, duress, or undue influence, (4) reasonable certainty that the expectancy of inheritance would have been realized but for the interference by the defendant and (5) damage resulting from the interference. *Firestone* at 88.

{¶ 49} The first element of an IIEI claim requires the plaintiff to identify what he or she expected to inherit and to show that the plaintiff, in fact, had an

"expectancy" of "inheritance" with respect to that property. As stated above, Tina has conceded that she cannot relitigate in this case the probate court's determination in the will contest action that the 2004 will was valid and was not the product of undue influence by Nina. Given that Tina contested the 2004 will, her inheritance under the will was limited to $1 regardless of the amount of assets in her mother's probate estate.

{¶ 50} However, Tina argues that these findings did not bar her IIEI claim because her amended complaint "did not center on her belief that there should be more asserts in their mother's probate estate," but rather, "asserted and pled" that Rosaline had "non-probate assets worth several million dollars" that Tina would have inherited were it not for Nina's interference. The essence of Tina's argument is that, if it were not for Nina's interference, Tina would not only have inherited assets through the will, but also through other non-probate transfers, e.g., gifts from her mother or as a beneficiary on her mother's bank accounts. Tina contends that her expectancy of inheritance of "substantial" non-probate assets could be inferred from her status as one of Rosaline's two children and the statements in her affidavit and the affidavits of Aude, David and Ayala, that Tina and Rosaline had once had a close relationship, that Rosaline had "historically" treated her daughters equally and that Rosaline had, at one point, "confided" to her coworkers that her will left everything to her children "50/50."[14]

---

[14] As noted above, the affidavits are silent as to exactly when these confidences were shared. However, given that Tina has asserted that her mother stopped working at

{¶ 51} We disagree. The fact that Tina was one of Rosaline's daughters and had once had a close relationship with her mother was not enough to establish an expectancy of inheritance. *See, e.g., Holt v. Sawyer*, 180 Ohio App.3d 255, 2008-Ohio-6686, 905 N.E.2d 213, ¶ 9 (1st Dist.); *Werman*, 2001 Ohio App. LEXIS 1555, at 6-7.

{¶ 52} In *Holt*, the appellant argued that she had presented sufficient evidence that she had an expectancy of inheritance from her father's estate to survive summary judgment on an IIEI claim where she was the beneficiary of her deceased father's life insurance policy when he divorced her mother, she had had "secret meetings" with her father and was his sole surviving child. *Id.* at ¶ 9. Under his will, her father left his entire estate to his wife (i.e., the appellant's stepmother). *Id.* at ¶ 3. The appellant alleged that her stepmother had "broken up" her father's first marriage, that she had attempted to exclude the appellant and her brother from their father's life and that the appellant had met with her father in secret, before ultimately losing contact with him, because her stepmother disapproved of their meetings. *Id.* at ¶ 2. The plaintiff did not, however, "allege or show" that she had been promised any inheritance by her father. *Id.* at ¶ 9. The First District found that the fact that the plaintiff was his daughter and was a beneficiary on his life insurance policy was "not sufficient to create an expectancy." *Id.*

---

the family business in 2002, it appears this occurred before she executed her 2004 will. In any event, it was many years before her death in 2019.

{¶ 53} In *Werman*, 2001 Ohio App. LEXIS 1555, the appellants were nieces and nephews of the decedent, "part of a small family," who each received $1 from their aunt's estate at the time her will was probated *Id.* at 6-7 and fn. 3. They argued that, based on the fact that they were related to the decedent and that "comments [had] been made in the past suggesting that certain heirlooms would be kept in the family," they had a reasonable expectancy of a greater inheritance. *Id.* at 5. In affirming the trial court's decision granting summary judgment in favor of the appellee, the Eleventh District rejected the appellants' attempt to recover based on "hunches and mere speculation." *Id.* at 7-8. The court indicated that there was no evidence that the decedent had promised them that they were going to inherit under her will and none of the appellants had seen a copy of her will. *Id.* at 6. The court also noted that appellants had had little or no contact with their aunt in the 15 years prior to her death and that she had not given appellants any gifts or money for many years. *Id.*

{¶ 54} Tina offered no evidence of a promise or other statements by her mother that indicated her intent to gift Tina any particular assets or property (either during her lifetime[15] or upon her death) or her intent to make Tina a joint owner or

---

[15] In her reply brief, Tina asserts that were it not for Nina's interference, Tina would have received a share of Rosaline's assets not only as non-probate assets upon her death but also as gifts during her lifetime. She explains:

Gifts. It is common knowledge and common sense that parents make inter vivos gifts to their children in their lifetime. It is also common sense that if one doesn't visit or get to see one's parents, one gets fewer gifts. [Nina's] bad mouthing and isolating of Rosaline — and all the Thanksgivings,

beneficiary of any particular asset that would have transferred outside of probate following her death.  The only evidence of specific facts presented regarding Rosaline's intent with respect to Tina's inheritance was the 2004 will.  Tina did not claim that Rosaline had ever expressed a desire (or had taken any steps) to change her 2004 will.[16]  The vague, nonspecific assertions in the affidavits Tina submitted and Tina's speculation that Rosaline would have given her more were it not for Nina's alleged interference do not create a genuine issue of fact that Tina had a reasonable expectation of inheritance beyond the inheritance provided in the 2004 will.  *See, e.g., Jochum v. Listati*, 8th Dist. Cuyahoga No. 106957, 2019-Ohio-166, ¶ 9 ("An affidavit submitted on summary judgment must contain more than general, conclusory assertions to create a genuine issue of material fact for trial."); *Sigler v.*

---

Christmases, and Easters that she forbade Tina from seeing Rosaline, decreased the flow of gifts.

In this case, however, Tina asserted a claim for intentional interference with expectancy of *inheritance*, not intentional interference with expectancy of a *gift*. "[I]nheritance means that the property passes after the owner's death." *Brown v. Ralston*, 2016-Ohio-4916, 67 N.E.3d 15, ¶ 20 (7th Dist.).  Even if Tina had asserted a claim for intentional interference with expectancy of an inter vivos gift, we could not say, based on the record before us, that the trial court erred in granting Nina's motion for summary judgment because Tina has not pointed to any evidence in the record sufficient to create a genuine issue of material fact that Tina had an expectancy of a gift as to any of Rosaline's assets and that there was a reasonable certainty that any such expectancy of a gift would have been realized but for Nina's alleged interference.

[16] In *Kaufman v. Kaufman*, Cuyahoga C.P. No. CV-17-884086 (May 2, 2023), by contrast, the sole case Tina cites in her brief as being "similar" to this case, specific evidence was presented on summary judgment that the decedent had told her children and her attorney that she wanted to revise her estate plan to include all of her children and had been taking substantial steps to do that when one of her children interfered in those efforts.  No such evidence was presented here.

*Burk*, 3d Dist. Crawford No. 3-16-19, 2017-Ohio-5486, ¶ 50, 81 ("vague and conclusory" references failed to create a genuine issue of material fact for trial); *Davis v. Royal Paper Stock Co., Inc.*, 2022-Ohio-4135, 201 N.E.3d 506, ¶ 72 (12th Dist.) ("Mere speculation," "unsupported factual assertions" and "anecdotal allegations" are "insufficient to create genuine issues of fact."); *Turnmire v. Turnmire*, 2022-Ohio-3968, 200 N.E.3d 604, ¶ 28 (12th Dist.) ("'Mere speculation is insufficient to create a genuine issue of material fact to avoid summary judgment.'"), quoting *Fontain v. H&R Cincy Properties, LLC*, 2022-Ohio-1000, 187 N.E.3d 1, ¶ 67 (12th Dist.).

{¶ 55} Even assuming Nina had made all the property transfers alleged in the amended complaint, Tina has not shown that a genuine issue of fact exists as to whether those transfers "interfered" with, or otherwise resulted in, a reduction of any inheritance she would have otherwise received — through probate or otherwise — causing damages to Tina. It is undisputed that Tina's inheritance under the 2004 will was limited to $1. Tina has not claimed, much less presented any evidence, that she had ever been a joint owner or beneficiary of any of Rosaline's accounts. Tina has not alleged Nina had removed Tina (or used her influence to compel Rosaline to remove Tina) as a joint owner or beneficiary on any account.

{¶ 56} If any beneficiary or joint ownership designation on Rosaline's accounts had been successfully challenged and invalidated, or if any other inter vivos transfer of Rosaline's assets had been successfully challenged and invalidated, the subject assets would have either been returned to Rosaline's accounts (and, in

accordance with the terms of those accounts, become the exclusive property of Nina upon Rosaline's death) or reverted to Rosaline's estate and distributed to Nina in accordance with the 2004 will. *See, e.g., In re Stowers*, 11th Dist. Ashtabula No. 95-A-0009, 1995 Ohio App. LEXIS 5038, 8-10 (Nov. 9, 1995) ("The existence of a joint and survivorship bank account * * * raises a conclusive presumption that the survivor of the account, upon the death of the depositor, owns the money in the account. * * * Even if we were to now find that [appellee] exceeded her authority in making some or all of the transactions at issue [during the decedent's lifetime] and required that she return the money to the estate, the estate would have no authority other than to distribute it to appellee as the survivor on the accounts. * * * Once the death of the depositor occurs, all moneys allegedly misused by the beneficiary would go to the survivor anyway, resulting in any challenge being moot."); *In re Estate of Meloni*, 11th Dist. Trumbull No. 2003-T-0096, 2004-Ohio-7224, ¶ 43-44 (appellant's contention that appellee improperly disbursed funds through gratuitous transfers was "moot" where the transfers "originated from withdrawals of funds, prior to [the decedent's] death, from joint and survivorship accounts to which appellant was not entitled to a survivorship interest"); *Wright v. Bloom*, 69 Ohio St.3d 596, 635 N.E.2d 31 (1994), paragraph three of the syllabus (if joint and survivor designation on a bank account is invalid, funds belong exclusively to depositor's estate upon death); *Swank v. Swank*, 5th Dist. Richland No. 2011 CA 8, 2011-Ohio-6920, ¶ 83-84 (successful challenge of inter vivos transfers to decedent's son would have resulted in the transfers being invalidated and the property would

have reverted to the estate). Likewise, any personal property Rosaline owned at the time of her death, e.g., jewelry, gold, artwork or furniture, would have been part of her probate estate and distributed to Nina in accordance with the 2004 will. Thus, even assuming Nina made all of the transfers alleged in the amended complaint, Tina would still have received only $1. Accordingly, based on the facts alleged by Tina, there is no genuine issue of material fact that Tina has not sustained any recoverable damages as necessary to sustain her IIEI claim, and the trial court did not err in granting summary judgment in favor Nina on Tina's IIEI claim.

**Other Claims Asserted in the General Division Action**

{¶ 57} Tina does not meaningfully address her claims for unjust enrichment, conversion, damages under R.C. 2307.60(A) or constructive trust/accounting (or the elements required to prove those claims) in her appellate briefs. She simply asserts generally that "actions for unjust enrichment, conversion, constructive trust and victim of crime have different elements" than the matters decided in the will contest action and that, because she was the nonmoving party on summary judgment, the trial court should have inferred, based on the alleged facts, that "there was unjust enrichment, conversion, and theft."

{¶ 58} Unjust enrichment occurs where "a person 'has and retains money or benefits which in justice and equity belong to another.'" *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 20, quoting *Hummel v. Hummel*, 133 Ohio St. 520, 528, 14 N.E.2d 923 (1938). To prevail on a claim for unjust enrichment, a plaintiff must prove, by a preponderance of the evidence, that

(1) a benefit was conferred by the plaintiff on the defendant, (2) the defendant had knowledge of the benefit and (3) the defendant retained the benefit under circumstances in which it was unjust to do so without payment. *Johnson* at ¶ 20, citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984); *Figgie v. Figgie*, 8th Dist. Cuyahoga No. 109829, 2021-Ohio-1195, ¶ 55. The purpose of an unjust enrichment claim is not to compensate the plaintiff for loss or damage suffered by the plaintiff, but to compensate the plaintiff for the benefit he or she conferred on the defendant. *Johnson* at ¶ 21; *Figgie* at ¶ 54.

{¶ 59} Conversion is "'the wrongful control or exercise of dominion over the property belonging to another inconsistent with or in denial of the rights of the owner.'" *Poston ex rel. Poston v. Shelby-Love*, 2017-Ohio-6980, 95 N.E.3d 659, ¶ 18 (8th Dist.), quoting *Beavers v. PNC Bank, N.A.*, 8th Dist. Cuyahoga No. 99773, 2013-Ohio-5318, ¶ 29. To prevail on a claim for conversion, a plaintiff must prove: (1) the plaintiff's ownership or right to possession of the property at the time of the conversion, (2) the defendant's conversion by a wrongful act or disposition of the plaintiff's property rights and (3) damages. *See, e.g., Mathews v. Cooper*, 8th Dist. Cuyahoga No. 109974, 2021-Ohio-2768, ¶ 46; *Figgie v. Figgie*, 8th Dist. Cuyahoga No. 109834, 2021-Ohio-1812, ¶ 11; *Lanzalaco v. Lanzalaco*, 2012-Ohio-4053, 976 N.E.2d 309, ¶ 31 (8th Dist.). If the defendant came into possession of the property lawfully, the plaintiff must further establish that (1) the plaintiff demanded the return of the property after the defendant exercised dominion or control over the

property and (2) the defendant refused to deliver the property to the plaintiff. *6750 BMS, L.L.C. v. Drentlau*, 2016-Ohio-1385, 62 N.E.3d 928, ¶ 28 (8th Dist.).

{¶ 60} R.C. 2307.60 "independently authorizes a civil action for damages caused by criminal acts unless otherwise prohibited by law." *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 6, 10 ("R.C. 2307.60(A)(1), by its plain and unambiguous terms, creates a statutory cause of action for damages resulting from any criminal act."). R.C. 2307.60(A)(1) states:

> Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code.

*See also* R.C. 2307.61(A) (identifying the damages a "property owner" may recover "[i]f a property owner brings a civil action pursuant to [R.C. 2307.60(A)] to recover damages from any person * * * who commits a theft offense, as defined in section [R.C. 2913.01], involving the owner's property"). An underlying criminal conviction is not required for recovery under R.C. 2307.60(A)(1). *Buddenberg v. Weisdack*, 161 Ohio St.3d 160, 2020-Ohio-3832, 161 N.E.3d 603, ¶ 1-2, 11, 14, 22. Tina's claim for damages under R.C. 2307.60(A)(1) was based on Nina's alleged theft and embezzlement of Rosaline's assets. Amended Complaint ¶ 64 ("Defendant has engaged in theft and/or embezzled money and property * * * that was Rosaline's, including bank accounts, jewelry, furs, and rings."). Ohio's theft statute, R.C. 2913.02, states in relevant part:

No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent;

(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

(3) By deception;

(4) By threat;

(5) By intimidation.

R.C. 2913.02(A). Tina does not identify in her amended complaint which particular provision(s) she contends applies.[17]

{¶ 61} Tina has not shown that a genuine issue of material fact exists as to any of these causes of action. As alleged in her amended complaint, Tina's claims for unjust enrichment and conversion are predicated on Tina's allegations that Nina did some wrong to Rosaline or Rosaline's property. Amended Complaint ¶ 36, 38, 44, 48, 55, 58, 61, 64. Tina does not allege any facts that show that Tina conferred a benefit on Nina or that Nina was unjustly enriched by Tina. Tina does not allege that Nina converted any property owned by Tina. Tina's claim for damages under R.C. 2307.60(A)(1) was based on Nina's alleged theft and embezzlement of Rosaline's assets, not Tina's. Amended Complaint ¶ 64. Tina has not alleged that

---

[17] Ohio does not currently have a separate criminal embezzlement statute. *But see* R.C. 2913.01(K)(3) (defining "theft offense" to include "[a]n offense under an existing or former municipal ordinance or law of this or any other state, or of the United States, involving robbery, burglary, breaking and entering, theft, embezzlement, wrongful conversion, forgery, counterfeiting, deceit, or fraud"); *see also* 1974 Committee Comment to R.C. 2913.02 ("This section covers a plethora of former offenses of which the gist was larceny, embezzlement, conversion, fraud, or false pretense. * * * [C]onversion or embezzlement now constitutes theft, since the section defines theft as exerting control (as opposed to initially gaining control over property or services) beyond the scope of the owner's consent, and with purpose to deprive the owner of the same.").

Nina embezzled or stole any property owned by Tina. Tina has not presented any evidence from which it could be reasonably concluded that she was the owner of, co-owner of, beneficiary of or had any other type of property interest in any of the bank accounts or other personal property allegedly converted, diverted or stolen by Nina. As Tina describes her claims in her reply brief, "The Common Pleas case seeks compensation from [Nina's] conversion of *Rosaline's assets* and outright theft and wasting of *her mother's assets*." Tina has not cited any legal authority to support an argument that she is entitled to recover on such claims based on similarly alleged facts. *Compare Thomas v. Delgado*, 2022-Ohio-4235, 201 N.E.3d 1021, ¶ 86 (3d Dist.) (where the basis of appellant's fraud claim was predicated on an injury suffered by the decedent, trial court properly granted motion for summary judgment in favor of appellees because "'[u]nder law, those claims belong to the estate of [the decedent] and may not be asserted by third parties'"), quoting *Treadway v. Free Pentecostal Pater Ave. Church of God, Inc.*, 12th Dist. Butler No. CA2007-05-139, 2008-Ohio-1663, ¶ 27, 30 (appellants lacked standing to bring claims that asserted an injury suffered by the decedent, including conversion of the decedent's assets).

{¶ 62} Further, although set forth as a separate count in Tina's amended complaint, the imposition of a constructive trust and a request for an accounting are generally considered to be remedies, not independent causes of action. *See, e.g., Kobal v. Edward Jones Sec.*, 8th Dist. Cuyahoga No. 109753, 2021-Ohio-1088, ¶ 14; *Figgie*, 2021-Ohio-1195, at ¶ 43; *see also Graham v. Lakewood*, 2018-Ohio-1850, 113 N.E.3d 44, ¶ 58 (8th Dist.) ("A constructive trust is a remedy, not a cause of

action."); *Francisco A. Mateo MD, Inc. v. Proia*, 2023-Ohio-3908, 227 N.E.3d 389, ¶ 55 (7th Dist.) ("In non-partnership contexts, appellate courts have generally concluded a claim for an accounting is a remedy rather than an independent cause of action."); *Krohn v. Ostafi*, 6th Dist. Lucas No. L-19-1002, 2020-Ohio-1536, ¶ 37 ("An accounting, like a constructive trust, is an equitable remedy, not a cause of action[.]"). Tina has not identified any basis on which Nina could be compelled to account to her, other than in connection with her role in probate court as executor of their mother's estate, which accounting has already occurred and approved by the probate court.

{¶ 63} Accordingly, the trial court did not err in granting summary judgment in favor of Nina on Tina's claims for unjust enrichment, conversion, damages under R.C. 2307.60(A) and constructive trust/accounting. We overrule Tina's first assignment of error.

### Denial of Right to Remedy and Delaying Justice

{¶ 64} In her third assignment of error, Tina contends that the trial court's ruling on summary judgment violated her right to remedy under Article I, Section 16 of the Ohio Constitution by "destroying a judicially recognized remedy and delaying justice."

{¶ 65} Article I, Section 16 of the Ohio Constitution provides, in relevant part:

> All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.

{¶ 66} Tina asserts that by denying her relief on her IIEI claim and her claim for civil damages as a "victim of crime" under R.C. 2307.60,[18] she was unconstitutionally denied "a meaningful and fair opportunity for redress" following "[f]our years of a wild goose chase to get discovery and * * * pursue judicial remedies." As explained above, the trial court properly granted Nina's motion for summary judgment because, based on the evidence presented, there was no genuine issue of material fact that Tina could not prove essential elements of her claims against Nina. Although Civ.R. 56(F) provided a mechanism by which Tina could have sought a continuance to conduct additional discovery if she felt she needed it to oppose Nina's motion for summary judgment, Tina did not seek such relief. Tina has not cited any relevant legal authority to support her claim that, under such circumstances, the trial court's decision to grant summary judgment violated Article I, Section 16 of the Ohio Constitution. Simply because Tina was unsuccessful in demonstrating the existence of a genuine issue of material fact for trial on her motion for summary judgment does not mean her rights under the Ohio Constitution were violated. Accordingly, we overrule Tina's third assignment of error.

{¶ 67} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

---

[18] Tina does not reference her other claims in her third assignment of error.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
MICHAEL JOHN RYAN, J., CONCUR